**In the Matter of LAKE IN THE WOODS, a Michigan Limited Partnership.**

**TEACHERS INSURANCE AND ANNUITY ASSOCIATION OF AMERICA, Appellant,**

v.

**LAKE IN THE WOODS, Appellee.**

Bankruptcy No. 79–03326.
Civ. No. 80–74077.

United States District Court,
E. D. Michigan,
Southern Division.

April 15, 1981.

Herbert Weingarten, Hertzberg, Jacob & Weingarten, Detroit, Mich., for appellant.

Irving A. August, August, Thompson, Sherr & Miller, Birmingham, Mich., for appellee.

### MEMORANDUM OPINION

ANNA DIGGS TAYLOR, District Judge.

This court is presented with an appeal by Teachers Insurance and Annuity Association of America (TIAA) from the "Seventh order extending time under which debtor has the exclusive right to file a plan" entered by a United States Bankruptcy Judge on October 14, 1980. TIAA contends that the bankruptcy court erred when it determined that there was cause to extend the debtor's exclusive right to file a plan. This court's jurisdiction is predicated upon Section 233(a) and Section 405(c) of the Bankruptcy Code,[1] which amended 28 U.S.C. § 1334. Appellant having complied with those portions of Part VIII of the Rules of Bankruptcy Procedure which are not inconsistent with the Bankruptcy Code, the court finds its jurisdiction to have been invoked properly.

The debtor in this matter, Lake in the Woods, filed a petition for reorganization under Chapter 11 of the new Bankruptcy Code. As under the old Bankruptcy Act

---

1. The Bankruptcy Reform Act, Public Law No. 95–598 (1978), shall be referred to as the Bankruptcy Code in this decision to distinguish it from the statute it replaced, the Bankruptcy Act of 1898.

the purpose of a reorganization is to restructure the debtor's finances, if possible, so that the debtor may both continue to operate the enterprise and repay its creditors.[2] To accomplish this goal a plan of reorganization must be formulated, then filed and confirmed through the bankruptcy court. In the event a plan cannot be filed or confirmed under the provisions of Chapter 11, the case is either converted to one for liquidation or dismissed.[3] Formulation of a plan that will be accepted by a party's creditors and confirmed by the bankruptcy court is therefore crucial to the concept of reorganization.

The scope of a plan of reorganization may vary widely under Chapter 11, although certain provisions are mandatory. Among other requirements the plan must contain specific classifications for each claim or interest a debtor bears, a description of the treatment to be afforded the various classifications and the means by which the proponent intends to execute the plan.[4] The terms of the plan itself are necessarily a product of negotiation between the debtor and those with outstanding claims or interests, and Chapter 11 is drafted to afford maximum flexibility to the parties in the structuring of a plan of reorganization. As the legislative history of Chapter 11 notes:

> The bill does not impose a rigid financial rule for the plan. The parties are left to their own to negotiate a fair settlement. The question of whether creditors are

entitled to the going-concern or liquidation value of the business is impossible to answer. It is unrealistic to assume that the bill could or even should attempt to answer that question. Instead, negotiation among the parties after full disclosure will govern how the value of the reorganizing company will be distributed among creditors and stockholders.[5]

Section 1121[6] of the Bankruptcy Code specifies who may file a plan of reorganization with the Bankruptcy Court. Filing of the plan is a statutory prerequisite to confirmation. Under Section 1121(a) the debtor may file a plan at any time during the pendency of a voluntary reorganization proceeding. Section 1121(b) accords the debtor an exclusive right to file a plan for 120 days after the date the order for relief is issued. If the debtor fails to file a plan within the 120 day period, any party in interest may then file its own plan. However, pursuant to Section 1121(d), upon request of a party in interest and after notice and hearing, the court may for cause reduce or increase the debtor's exclusive period. This appeal examines the question of what circumstances constitute cause to reduce or increase the debtor's exclusive period and whether the bankruptcy court erred in finding there was cause to extend the period.

Debtor Lake in the Woods, (Lake) a Michigan limited partnership, filed its petition for reorganization on October 3, 1971,

**2.** H.R.Rep. No. 595, 95th Cong., 2nd Sess. 220 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787.

**3.** 11 U.S.C. § 1112.

**4.** 11 U.S.C. § 1123.

**5.** H.R.Rep. No. 595, 95th Cong., 2nd Sess. 224 (1978).

**6.** Section 1121 of the Bankruptcy Code states as follows:
§ 1121. Who may file a plan
(a) The debtor may file a plan with a petition commencing a voluntary case, or at any time in a voluntary case or an involuntary case.
(b) Except as otherwise provided in this section, only the debtor may file a plan until after 120 days after the date of the order for relief under this chapter.

(c) Any party in interest, including the debtor, the trustee, a creditor's committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may file a plan if and only if—
(1) a trustee has been appointed under this chapter;
(2) the debtor has not filed a plan before 120 days after the date of the order for relief under this chapter; or
(3) the debtor has not filed a plan that has been accepted, before 180 days after the date of the order for relief under this chapter, by each class the claims or interest of which are impaired under the plan.
(d) On request of a party in interest and after notice and a hearing the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.

two days after the effective date of the new Bankruptcy Code. Examination of its certified statement of financial affairs, filed on December 5, 1979, indicates that the debtor receives all of its income from the ownership and operation of a substantial apartment complex in Ypsilanti Township. The complex itself, which is located on the shore of Ford Lake, contains thirty-nine garden-type buildings, one mid-rise apartment building and such amenities as a marina, a swimming club and golf facilities. Appellant TIAA is listed on Schedule A–2 of the debtor's statement as a secured creditor holding two real estate mortgages in an aggregate amount of $18,273,897.62. Lake in the Woods owes TIAA a larger sum by far than it does to any of its other creditors.

The debtor's statement of financial affairs also indicates that as of the date of its petition for reorganization, Lake owed over $1,100,000 in real estate property taxes, interest and penalties for the years 1978 and 1979 to the Washtenaw County Treasurer. The statement lists Teachers Realty Corporation as the debtor's landlord entitled to monthly ground rent of approximately $25,-000.00. Ground rent was scheduled as $126,241.70 in arrears on the date the statement was filed; an additional $72,595.00 identified as participation rent is also reflected as due to Teachers Realty Corporation. Both parties concede in their briefs that Teachers Realty Corporation (TRC) is a wholly owned subsidiary of appellant TIAA. Total unsecured claims without priority tallied approximately $418,800.00.

Pursuant to 11 U.S.C. § 1121(b) the debtor had an exclusive statutory right to file a plan of reorganization without leave of the court until January 31, 1980. On January 31, 1980, acting upon written stipulation between counsel for TIAA, counsel for the debtor and the attorney for the creditors' committee, the bankruptcy court granted Lake in the Woods an additional sixty days in which debtor alone could file a plan for reorganization. Thus, in the absence of further extensions any party in interest would have been entitled to file a plan for confirmation as of March 30, 1980. On March 25, 1980, the bankruptcy court extended the time during which debtor retained its exclusive right until June 1, 1980. The court's written order does not state that this action was taken for cause, but rather notes that no valid objection had been raised to the debtor's motion for an extension of time. On May 23, 1980, the court granted Lake in the Woods a third extension, giving the debtor the exclusive right to propose a plan until July 1, 1980. A fourth extension was granted on June 26, 1980, which accorded debtor until August 1, 1980 to file.

Following the court's fourth order of extension counsel for Lake filed a written motion requesting that the exclusive right to file be continued to September 1, 1980. Debtor's motion stated that because of the nature of its operation only Lake in the Woods could feasibly file a plan and obtain continuity of management. The motion was opposed by TIAA on the grounds that eleven months was more than ample time in which to formulate and file a plan. On August 5, 1980, the bankruptcy court granted debtor the requested extension. The court's written order stated that no valid objection had been raised to debtor's application. A sixth extension pursuant to stipulation between the parties was entered on September 2, 1980. This extension was granted to afford the court an opportunity to hear oral arguments on the debtor's application for further extensions.

The bankruptcy court held a hearing relative to the debtor's seventh application for extension on September 5, 1980. Referring to Section 1121(d) which allows the court to extend the debtor's exclusive period for cause, counsel for Lake argued that the existence of a dispute between Lake and TIAA over title to the land on which the complex is located provided cause to continue the extensions of the exclusive filing period. The title issue raised by debtor required judicial construction of the financing arrangement between Lake, TIAA and TRC. Debtor alleged that the financing arrangement was that of an equitable mortgage rather than a lease. Lake maintained that until TIAA either acknowledges that

the debtor holds title to the land or consents to sell Lake a deed, no feasible plan of reorganization can be filed. (Transcript of Proceedings, September 5, 1980, 3–4.) In response, counsel for TIAA labelled the title issue as both a stall and a red herring, designed to prolong the debtor's operation of the complex. (Transcript, 5–6). Refusing to concede the existence of a dispute between the parties, counsel argued that a plan could be filed which contained a provision requiring the consent of TIAA or its subsidiary to any title arrangement Lake might propose. After considering the arguments, the court determined that the existence of a "legitimate, bona fide dispute between you (TIAA) and between the debtor here as to the ownership of this property," provides sufficient cause to extend the debtor's exclusive period under Section 1121(d). (Transcript, 18.) Thus an order was entered granting the debtor a forty-five day extension contingent upon filing a complaint for declaratory judgment of the title issue no later than October 20, 1980. The court further ordered that upon application and notice the exclusive period would automatically be extended every 45 days until such time as the bankruptcy court determined whether the debtor's interest in the land was that of a lessee or an equitable mortgagor. As of today, the debtor has not yet filed a plan for reorganization; nor is any other party in interest permitted to do so under the court's order.

The question of what circumstances give rise to cause sufficient to extend the normal 120 day filing period under Section 1121(d) of the Bankruptcy Code is one of first impression, there being no reported decisions commenting upon that section of the Code. Despite the absence of case law TIAA relies upon the extensive legislative history of Chapter 11 to support its appeal. Appellant stresses that in its effort to reform the old Bankruptcy Act Congress repeatedly expressed an intention to place the debtor and creditor on a more equal footing during reorganization proceedings. Thus, Chapter 11 of the Code does not confine the right to file a plan of reorganization to one party or the other. TIAA argues that the court's finding of cause predicated upon the presence of a dispute between the parties is contrary to the legislative purpose of Chapter 11 because the bankruptcy court's extension of the exclusive filing period improperly destroys the balance between parties in interest that Section 1121 was designed to insure.

In response appellee, Lake in the Woods, contends that Section 1121 was intended to afford the debtor a meaningful first opportunity to propose a plan. Pointing to the dispute between the parties over title to the land on which the complex is situated, Lake argues that no feasible plan can be filed by any party until the bankruptcy court rules on the title question. Thus, until the title issue has been resolved, Lake's long exclusive period so far has been meaningless and the goal of Section 1121 thwarted. In oral argument before this court counsel for the appellee stated that if TIAA would concede the title question a plan of reorganization would be immediately forthcoming from the debtor.

■ For the reasons stated below, this court finds that it was erroneous as a matter of law for the bankruptcy court to conclude that a dispute between the parties over title to real estate constitutes cause to extend the debtor's exclusive filing period. The district court is free to examine the legal conclusions of a bankruptcy judge and to reject them if they are erroneous. *In re Amex-Protein Development Corp.*, 504 F.2d 1056, 1058 (9th Cir. 1974); *National Cash Register Co. v. K. W. C., Inc.*, 432 F.Supp. 82, 83 (E.D.Ky., 1977). The bankruptcy court's conclusion of law here improperly contradicted a major legislative goal of Chapter 11 as revealed by the statutory language itself and as that goal is illuminated by the legislative history. This court rejects the appellee's contention that the finding of cause to extend the debtor's exclusive period under Section 1121(d) is commended to the bankruptcy court's discretion and thus subject to reversal only if the reviewing court finds abuse. Unlike Rule 906 of the Rules of Bankruptcy Procedure under the old Act, which allows the bank-

ruptcy court in its discretion to reduce or extend time periods for cause shown, Section 1121(d) does not refer to the discretion of the bankruptcy court. This court finds the absence of reference to the bankruptcy court's discretion in Section 1121(d) to be significant and indicative of congressional intent to require a higher standard of review by the district court than would be the case were an exercise of discretion by the bankruptcy court on appeal. However, while this court bases its decision on an error of law, it notes that the bankruptcy judge abused his discretion as well in arriving at the decision to extend the debtor's exclusive period. In response to appellant's attempt to point out the legislative history of Section 1121(d) and thus to illuminate the statutory meaning of cause, the bankruptcy court refused to consider the comments of Congress. (Transcript, 17). In light of the fact that the bankruptcy court was being called upon to interpret and apply new legislation, this court finds that the judge's decision to totally ignore relevant legislative history was an abuse of its discretion.

The new Bankruptcy Code is the product of years of study and the numerous proposals of interested groups. Since 1973 Congress has considered and debated revisions of the old Act offered first by the legislatively appointed Commission on the Bankruptcy Laws of the United States and then by the National Conference of Bankruptcy Judges.[7] Due to the diligence of their effort the Bankruptcy Code is accompanied by a wealth of legislative history. Although the committee reports and legislative comments which relate to the final version of the bill are of greatest significance, the court recognizes the Code is a product of evolution. Thus reports and comments which elucidate earlier versions of the Code must also be considered in an effort to understand and then enforce the ultimate legislative intent of the statute.[8]

Chapter 11 of the Code, and specifically Section 1121, represents a departure from the procedure under the old Act. While Section 1121 normally allows any party in interest to file a plan of reorganization once the initial 120-day period has passed, under Chapter XI of the Act only a debtor could file a "plan of arrangement." All of the proposed revisions of the Act which Congress considered prior to passage of the Code contained provisions eliminating the debtor's exclusive right to file a plan. The desire to allow other interested parties to file a plan was grounded in the philosophy that there should be a relative balance of negotiating strength between debtors and creditors during reorganization of an enterprise. This goal was explained during the hearings before the House of Representatives on one of the drafts which preceded final passage of the new Code.

As indicated, under the present Chapter XI the debtor may have unnecessary power to force creditors to yield to the terms of its proposal. Within certain limits, the Chapter XI debtor can effectively dictate the essential ingredients of a Chapter XI plan to its creditors. In many cases, the alternative to creditors may be to accept the proverbial "ten cents on the dollar" offered or be confronted with an adjudication in bankruptcy and the resultant liquidation. The bargaining power of creditors in such circumstances may be severely limited. The substantial loss that may be faced by creditors as a consequence of the forced auction sale of work in process, inventory, machinery and plant may be overwhelming.

In some Chapter XI cases, a settlement proposal is made on condition that a major and controlling stockholder be offered a substantial sum for his interest in the business while the return to creditors is minimal. Indeed, creditors may not be privy to the negotiations of such a stockholder and the arrangements which he

---

**7.** H.R.Rep. No. 595, 95th Cong., 2nd Sess., 2–3 (1978).

**8.** *See, Train v. Colorado Pub. Int. Research Group*, 426 U.S. 1, 10, 96 S.Ct. 1938, 1942, 48 L.Ed.2d 434 (1976); *Cass v. United States*, 417 U.S. 72, 94 S.Ct. 2167, 40 L.Ed.2d 668 (1974).

may make concerning the financing of a Chapter XI plan and the sale of the principal's interest; a result which could not occur under Chapter X.

Of course, the bargaining position of the debtor under present Chapter XI may be further enhanced by the debtor's control of the business and the fear that a debtor through inter manipulation may destroy or diminish the value of the business if creditors do not acquiesce to the debtor's Chapter XI plan. The take-it-or-leave-it attitude on the part of debtors as permitted by Chapter XI is fraught with potential abuse. The granting of authority to creditors to propose plans of reorganization and rehabilitation serves to eliminate the potential harm and disadvantages to creditors democratizes the reorganization process.[9] (Footnotes omitted.)

Section 1121 of the new Code was adopted from a substantially identical section of H.R. 8200, the immediate predecessor of the new statute in the House of Representatives. The legislative history of Section 1121 reflects congressional concern with two basic deficiencies of the old Act's reorganization provisions: their lack of flexibility, and the unfair leverage enjoyed by either debtors or creditors under the various chapters. Chapter X, originally designed for corporate reorganizations, was an unpopular procedure under the Bankruptcy Act both because it required the debtor to relinquish control of its enterprise, and because it imposed a rigid and formalized structure over the proceedings.[10] While Chapter XI was designed to accommodate more flexibility during the reorganization, the sponsors of H.R. 8200 were dissatisfied with the undue bargaining advantage that debtors enjoyed by virtue of their exclusive right to file a plan of arrangement. The committee report which accompanied H.R. 8200 noted:

By contrast, Chapter XI gives the debtor the exclusive right to propose a plan. Creditors are excluded. The exclusive right gives the debtor undue bargaining leverage, because by delay he can force a settlement out of otherwise unwilling creditors, and they have little recourse except to move for conversion of the case to Chapter X. That is contrary to their interests, as it is to the debtor's, and thus is rarely done. The debtor is in full control, often to the unfair disadvantage of creditors.[11]

Section 1121 of the new Code, which allows both debtors and creditors to file plans of reorganization after an initial 120-day period, represents the legislative solution to the problems created by Chapter XI's exclusive filing provision, and by Chapter X's inflexibility. Under Chapter 11 the debtor is not automatically required to turn its operation over to a trustee, nor is it permitted to retain control of the enterprise until an unwilling creditor agrees to accept a proposed plan of reorganization. Referring to Section 1121 of H.R. 8200 the committee report states:

Proposed Chapter 11 recognizes the need for the debtor to remain in control to some degree, or else debtors will avoid the reorganization provisions in the bill until it would be too late for them to be an effective remedy. At the same time, the bill recognizes the legitimate interests of creditors, whose money is in the enterprise as much as the debtor's, to have a say in the future of the company. The bill gives the debtor an exclusive right to propose a plan for 120 days. In most cases, 120 days will give the debtor adequate time to negotiate a settlement, without unduly delaying creditors. The court is given the power, though, to increase or reduce the 120-day period depending on the circumstances of the case.

9. Bankruptcy Act Revision, Serial No. 27, Part 3, Hearings on H.R. 31 and H.R. 32 before the Subcomm. on Civil and Constitutional Rights of the Comm. on the Judiciary, 94th Cong., 2nd Sess., (March 29, 1976). (Prepared statement of Harvey R. Miller, William J. Rochelle and J. Ronald Trost) 1875–76.

10. H.R.Rep. No. 595, 95th Cong., 2nd Sess., 221–22 (1978).

11. *Ibid.*, 231, U.S.Code Cong. & Admin.News 1978, p. 6191.

For example, if an unusually large company were to seek reorganization under Chapter 11, the court would probably need to extend the time in order to allow the debtor to reach an agreement. If, on the other hand, a debtor delayed in arriving at an agreement, the court could shorten the period and permit creditors to formulate and propose a reorganization plan. Again the bill allows the flexibility for individual cases that is unavailable today.[12] (Footnotes omitted.)

Although the legislative goal behind Chapter 11 and Section 1121 is quite clear, neither the House nor the Senate committee reports discuss a definition of cause to reduce or increase the 120-day period under Section 1121(d). As the statement quoted above indicates, however, the drafters of Section 1121 in the House of Representatives believed that in most cases 120 days would accord the debtor sufficient time to negotiate a plan with its creditors. The report specifically cautions that the period could be shortened by the bankruptcy court if a debtor delays in arriving at an agreement. The committee report which accompanied the final Senate version of the new Code also contained a provision which would have allowed the court to extend or reduce the debtor's exclusive period for cause. The senate drafters cautioned, however, that an extension should not be employed as a tactical device to put pressure on the parties to yield to a plan they considered unsatisfactory.[13]

██ In the case at bar, the bankruptcy court has extended the debtor's exclusive filing period from four months to one and one-half years. The court also stated its intention to continue the exclusive period until it has ruled on the title dispute between the parties or the dispute has been conceded. Once the title dispute has been resolved by the bankruptcy court, a dissatisfied party will be free to appeal the ruling and further prolong the reorganization pro-

ceedings. Rather than enforcing a relatively equal relationship between the debtor and its creditors, as the Code's draftors envisioned, the bankruptcy court's finding of cause leaves Lake's creditors in the disadvantageous position that Chapter 11 was designed to remedy. Lake continues to operate the complex and maintains a "take it or leave it attitude," refusing to file a plan until TIAA concedes the title issue. Figuratively, appellant's hands are tied, because the bankruptcy court has denied it any opportunity to file a plan of its own. While Lake's contention that no party can file a feasible plan until title has been settled may ultimately prove correct, valid cause to bar the creditor's efforts has not been shown. There is no section of Chapter 11 which requires a party in interest to demonstrate that it could file a feasible plan in response to a debtor's application to extend the exclusive period. Cause to grant the relief requested under Section 1121(d) must be demonstrated by the party moving for relief.

██ After comparison of the provisions of Chapter 11 to the reorganization sections of the old Bankruptcy Act, and consideration of the legislative history which accompanies the Code, it is apparent to this court that the existence of a dispute between the debtor and creditor over title to real estate does not constitute cause to extend the exclusive period. Section 1121 of the new Bankruptcy Code was designed to remedy some of the excesses and imbalance contained in the act it replaced. The sponsors of the new Code made it clear that under Chapter 11 a debtor would no longer be permitted to force its creditors to accept its plan or face liquidation. While this court need not go beyond the facts of the appeal presented to structure an all-encompassing definition of cause under Section 1121(d), it does hold that extensions are impermissible if they are for the purpose of allowing the debtor to prolong reorganization while pres-

**12.** *Ibid.*

**13.** S.Rep. No. 989, 95th Cong., 2nd Sess., 118 (1978). Although Chapter 11 itself was adopt-

ed from the House Bill, the two reasons of Section 1121(d) are not in conflict. Therefore this court finds the Senate report to be relevant to its analysis.

suring a creditor to accede to its point of view on an issue in dispute. The bankruptcy court's finding in this case has precisely this impermissible effect. Although Congress intended Section 1121 as a device to promote a more equal relationship between debtors and creditors it has been applied by the court here as a means of allowing debtor to drag out the reorganization, continue in operation of the complex, and pressure the creditor for concession in the status of its rights.

In view of the foregoing, it is the opinion of this court that this matter must be remanded to the bankruptcy court for further proceedings under Chapter 11. The bankruptcy court's order of October 14, 1980 extending the time under which debtor has an exclusive right to file a plan for the seventh time is set aside, and any party in interest shall be allowed to file a plan of reorganization.

IT IS SO ORDERED.