**In re BARKER ESTATES, INC., Debtor.**

**Bankruptcy No. 79–24359.**

United States Bankruptcy Court,
W. D. New York.

Oct. 6, 1981.

Woods, Oviatt, Gilman, Sturman & Clarke by Paul S. Groschadl, Rochester, N.Y., for debtor.

Harris, Beach, Wilcox, Rubin & Levey by Jeffrey Baker, Rochester, N.Y., for Security Trust Co.

Lacy, Katzen, Ryen & Mittleman by Louis Ryen, Rochester, N.Y., for Creditor's Committee.

MEMORANDUM AND DECISION

EDWARD D. HAYES, Bankruptcy Judge.

Barker Estates, Inc., debtor herein, is a corporation organized to handle a planned unit development. Its assets consist primarily of undeveloped or partially developed land and some buildings thereon. It filed its petition pursuant to Chapter 11 on December 29, 1979. During the course of this Chapter 11, on a number of occasions, the debtor sought and was granted orders extending the 120 day period in which it had the exclusive right to file a plan or reorganization. The last order extending time extended the period for filing until September 1, 1981. On this date, the debtor did file a plan. Neither the debtor's motion papers nor the Court's orders extending the time for filing a plan mentioned the 180 day period within which the debtor must secure

acceptance of its plan, if other parties in interest are to be barred from filing competing plans.

Security Trust Company, hereinafter referred to as "Security", one of the debtor's creditors, now seeks permission to file its own plan and asks that both plans be mailed to creditors at the same time. The bank claims that it has a right to file a competing plan because the debtor has not filed a plan accepted within 180 days from the date of the order for relief as provided for in 11 U.S.C. § 1121(c).

Security argues that the debtor's request for an extension of the 120 day exclusivity period does not automatically include the additional 60 day period for securing acceptance of the plan. The debtor disagrees contending that it has 60 days from the date the plan was filed to secure acceptance. The question before the Court is what did Congress intend when it drafted 11 U.S.C. § 1121 of the new Code. That section provides in relevant part as follows:

§ 1121

(b) Except as otherwise provided in this section, only the debtor may file a plan until after 120 days after the date of the order for relief under this chapter.

(c) Any party in interest . . . may file a plan if and only if—. . .

(2) the debtor has not filed a plan before 120 days after the date of order for relief under this chapter; or *

(3) the debtor has not filed a plan that has been accepted, before 180 days after the date of the order for relief under this chapter . . .

(d) On request of a party in interest and after notice and a hearing, the court may for cause reduce or increase the 120 day period or the 180 day period * referred to in this section.

The debtor reads this section to mean that a debtor should have 60 days after a plan has been filed to secure acceptance of the plan. The section itself does not expressly provide for a 60 day grace period,

although, one may be implied. Congress granted debtors an exclusive right to file a plan under certain conditions for 120 days. If they filed that plan within 120 days, they automatically had up to 180 days to secure acceptance of the plan. Congress may have considered the former to be meaningless if not coupled with the 60 extra days contained in the latter. However, a fixed 60 day grace period is only a possible conclusion not a necessary one.

The legislative history of § 1121 provides no compelling answer to the issue at hand, but it is helpful to the extent it provides a background against which the provisions of § 1121 must be read as a limitation on rather than a grant of debtor's rights.

Under the Bankruptcy Act, as it existed prior to October 1, 1979, Chapter X provided for the appointment of a receiver or trustee to handle the business of the debtor during the reorganization period. It was highly formalized and put many strictures upon the operation of the business. Chapter XI under the Act, provided for the debtor to remain in control of the business and to propose a plan of reorganization. Chapter XII provided that the debtor could remain in possession of the business and gave certain secured creditors the right to file a plan.

The framers of the new Code were unhappy with the provisions of the Act and sought a rearrangement of the rights and duties of debtors and creditors. After considerable debate, Congress came up with the scheme embodied in Chapter 11 of the new Code. Among other things, Congress felt that the debtors' exclusive right to file a plan under Chapter XI was a problem:

[C]hapter XI gives the debtor the exclusive right to propose a plan. Creditors are excluded. The exclusive right, gives the debtor undue bargaining leverage, because by delay he can force a settlement out of otherwise unwilling creditors, and they have little recourse except to move for conversion of the case to chapter X. That is contrary to their in-

---

* Emphasis added.

terests as it is to the debtor's thus is rarely done. The debtor is in full control, often to the unfair disadvantage of creditors.

H.R.Rep.No. 595, 95th Cong., 1st Sess. 231 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6191.

Section 1121 was drafted to correct this imbalance:

The granting of authority to creditors to propose plans of reorganization and rehabilitation serves to eliminate the potential harm and disadvantages to creditors and democratizes the reorganization process.

Bankruptcy Act Revision, Serial No. 27, Part 3 Hearings on H.R. 31 and H.R. 32 before the Subcomm. on Civil and Constitutional Rights of the Comm. on the Judiciary, 94th Cong., 2nd Sess., (March 29, 1976).

■ When compared to prior law, the effect of 11 U.S.C. § 1121 is sharply to limit a debtor's exclusive right to file a plan. Creditors with ideas of their own can only be silenced if the debtor files a plan within 120 days and secures acceptance within 180 days. Both these time periods run from the date the order for relief was granted and are set out in separate paragraphs without reference to the other. A straightforward reading of the statute suggests that each time limitation is independant of the other and each has its own purpose, force and effect. The debtor's theory that the time limits are necessarily connected and a 60 day grace period must be implied can be credited only if the apparent meaning of the statute is discredited. Therefore, extension of one time period should not extend the other automatically.

■ Furthermore, in this case, the application to file a plan shows cause why Security should be permitted to file now. (*Trader's Insurance and Annuity Association of America v. Lake in the Wood*, 7 B.C.D. 588). The debtor has had since December 28, 1979 to file and to receive approval of a plan. The debtor filed his plan September 1, 1981. The order approving the Disclosure Statement was signed October 14, 1981. A vote on the debtor's plan cannot be scheduled prior to November of 1981 and by that time

debtor's exclusivity period, even if they were entitled to the extra 60 days, will have run. It would be senseless at this point to deny a creditor the right to file a different plan. The Code (11 U.S.C. § 1121(c)) contemplates the filing and acceptance of more than one plan at a time.

For all the reasons set forth above, Security will be permitted to file their plan as soon as it is ready. They may make application to have their Disclosure Statement approved as soon as it is ready. When their plan and Disclosure Statement are in a proper attitude or position to be mailed, it will be mailed, but the vote on the debtor's plan will not be delayed or synchronized with that of the creditor's plan. The creditors have the right to consider both plans as soon as they are ready and it is so ordered.