In re **GRAND TRAVERSE DEVELOP- MENT COMPANY LIMITED PART- NERSHIP, Grand Traverse Develop- ment Company, Inc., and Grand Tra- verse Condominium Developers, Inc., Debtors-in-Possession.**

Bankruptcy Nos. ST92– 83818–ST92–83820.

United States Bankruptcy Court, W.D. Michigan, N.D.

Nov. 6, 1992.

---

Schafer & Weiner, P.C. (Daniel J. Weiner, argued), Birmingham, Mich., for debtors Grand Traverse Development Co. Ltd. Partnership, Grand Traverse Development Co., Inc., and Grand Traverse Condominium Developers, Inc.

Clark, Klein & Beaumont (Michael S. Khoury, argued), Detroit, Mich., for Bd. of Trustees of Gen. Retirement System of City of Detroit and GRS Grand Hotel Corp.

## MEMORANDUM OPINION REGARDING SHORTENING OF THE EXCLUSIVITY PERIOD

JO ANN C. STEVENSON, Bankruptcy Judge.

The Grand Traverse Resort is a resort complex in Traverse City owned and operated by three separate entities: Debtors Grand Traverse Development Company Limited Partnership, Grand Traverse Development Company, Inc., and Grand Traverse Condominium Developers, Inc. These Debtors will collectively be referred to simply as the "Resort." The Resort's principal lender and creditor is the Board of Trustees of the General Retirement System of the City of Detroit ("Retirement Sys-

tem") and its subsidiary, GRS Grand Hotel Corp. ("Hotel Corp."), collectively referred to as "GRS." GRS has filed a proof of claim in the amount of approximately $80,-000,000.00.

In this case the Resort entities filed their petitions for chapter 11 relief on July 7, 1992. On the same date the Resort also filed its plan of reorganization. A first amended plan and the Resort's disclosure statement were filed on August 13, 1992. A first amended disclosure statement was filed on September 25, 1992. The plan was amended again on October 7, 1992 and October 27, 1992. The Resort also filed a second amended disclosure statement on October 27, 1992.

Since the July 7, 1992 filing the Resort and GRS have taken part in numbers contests including a preliminary hearing on the motion for lift of stay filed by GRS, cash collateral hearings, a motion to determine the binding effect of orders in a previous chapter 11 filed by the Resort, and the appointment of an appraiser by the court, to name but a few. There has also been a protracted battle over the effect of bankruptcy on the enforceability of an assignment of rents clause in GRS's loan documents, the outcome of which is reported in the court's opinion *In re Mount Pleasant Limited Partnership*, 144 B.R. 727 (Bankr. W.D.Mich.1992).

On September 17, 1992 the court held a status conference in this matter with the U.S. trustee and counsel for the Resort, GRS, and the unsecured creditors committee. At that conference dates were set to move this case toward resolution. The hearing on approval of the disclosure statement was set for October 23, 1992. The appraisers report was to be delivered on November 23 and 24, 1992, and confirmation of the plan was scheduled for the entire week of November 30, 1992.

On September 23, 1992, GRS filed its motion for an order shortening the exclusivity period to file a plan of reorganization, for an expedited hearing, and other relief. The motion requested that the court shorten the 120-day exclusivity period provided under 11 U.S.C. § 1121(b), and

requested that the court enter such other orders so as to permit the hearing on the Resort's disclosure statement and GRS's disclosure statement to proceed at the same time. The court denied GRS's motion for an expedited hearing; instead the matter was set for hearing on October 23, 1992, the same day as the hearing on the approval of the Resort's disclosure statement. After argument on GRS's motion the court declined to shorten the exclusivity period for the reasons stated below:

Under 11 U.S.C. § 1121 the debtor generally has the exclusive right to file a plan of reorganization during the first 120 days of bankruptcy. Section 1121(c) sets out three exceptions to this rule:

> Any party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may file a plan if and only if—
>
> (1) a trustee has been appointed under this chapter;
>
> (2) the debtor has not filed a plan before 120 day after the date of the order for relief under this chapter; or
>
> (3) the debtor has not filed a plan that has been accepted, before 180 days after the date of the order for relief under this chapter, by each class claims or interests that is impaired under the plan.

Although the three conditions under which the parties identified in § 1121(c) may file a plan appear to be alternative, the section is somewhat confusing as one of its three prongs conditionally provides for an extension of the 120-day period in § 1121(b). Specifically, § 1121(c)(3) provides that the bar on filing creditor plans is extended to 180 days if the debtor files a plan within the 120-day period. In this case, a plan was filed contemporaneously with the petition and thus the 180-day limitation is in effect. As an initial matter the court notes that the motion of GRS seeks to shorten the 120-day period. Since the Resort filed its plan within 120 days, the shortening of the 120-day period would be meaningless. The court will therefore address only the shortening of the 180-day exclusivity period.

Pursuant to § 1121(d) the exclusivity period may be shortened or lengthened for "cause." The Code gives little guidance as to what constitutes cause, and most of the case law addresses the lengthening of the exclusivity period at the behest of the debtor. In those cases courts have generally looked at the diligence of the debtor in proposing a plan, the complexity of the case and the relative negotiating strength of the parties. This latter factor is addressed to the policy in Chapter 11 of encouraging consensual plans of reorganization. *See, e.g. Teachers Insurance & Annuity Assoc. of America v. Lake In the Woods (In re Lake in the Woods)*, 10 B.R. 338, 344–45 (E.D.Mich.1981).

The parties have submitted, and the court's research has uncovered, only two cases that permitted shortening the exclusivity period: *In re Crescent Beach Inn, Inc.*, 22 B.R. 155 (Bankr.D.Me.1982), and *Pickens Industries, Inc. v. Palmer, Palmer & Coffee (In re Texas Extrusion Corp.)* 68 B.R. 712 (N.D.Tex.1986) *aff'd* 844 F.2d 1142 (5th Cir.1988). In one opinion in which the court refused to shorten the exclusivity period in *In re Texaco, Inc.*, 81 B.R. 806, 813 (Bankr.S.D.N.Y.1988) the court stated that the burden of establishing cause is on the moving party. Citing *Crescent Beach* and *Texas Extrusion* the *Texaco* court identified gross mismanagement by the debtor and acrimonious feuding between the debtor's principals as examples of "major obstacles to a successful reorganization," *id.* at 812, which may constitute cause.

The hurdles to reorganization which led to shortening of the exclusivity period in *Crescent Beach* and *Texas Extrusion* are not present here. There have been no allegations that the Resort mismanaged its operations, nor would such allegations likely be supportable, given the proofs admitted in other hearings before this court. To the extent there is acrimony in this case, its source appears to be GRS rather than some internal rift among the debtors. GRS's aggressive litigation stance cannot consti-

tute cause. To hold otherwise would permit litigious creditors to manufacture "cause" to shorten the exclusivity period through their own unilateral actions.

Drawing from those cases which addressed extending the exclusivity period, the court notes the Resort has been diligent in moving this case toward confirmation. As previously stated the Resort's first plan was filed with the petition. As the numerous amendments attest the Resort has been constantly working to refine its plan in this complex case. GRS, the Resort and the court have established a fairly tight schedule leading to a hearing on confirmation.

In the absence of any cases directly on point the court will apply the "obstacle to successful reorganization" test postulated in the *Texaco* case. GRS argues that no plan of reorganization can be confirmed without its consent and that it will not consent to this plan of reorganization. Numerous objections to the disclosure statement have been filed by GRS and the U.S. trustee, many of which appear to have some merit. There are potential problems with the Debtors' claims to the Country Club of Michigan realty and the treatment of § 1111(b) claims, to name but a few. The court believes that these matters raise a serious question regarding the Resort's ability to reorganize.

Balancing this is the timing of the GRS motion. As early as the Resort's plan was filed, the court believes that even at that point the plan came as no surprise to GRS. The parties will recall that in the period between the two chapter 11 proceedings GRS sought to have this court set aside the dismissal of the first case, but not the stay lift order which was part and parcel of the dismissal agreement. The court can conceive of no other purpose for this maneuver than to head off a threatened and anticipated second bankruptcy case. When the anticipated second case was filed, accompanied by a plan, GRS did not promptly seek authority to file a competing plan. Instead, GRS chose to pursue lift of stay. Although hinting that it was considering filing a plan GRS waited to file this motion until after a fast track for confirmation of the Resort's plan had been set and was well underway. The filing of a second plan at this late date would substantially disrupt the process previously put into motion with the acquiescence of GRS. To the extent that the Resort's plan may be confirmable, the filing of a competing plan at this point in time would seriously erode the Debtors' chance of reaching confirmation, thus effectively diminishing the protection which the exclusivity period of § 1121(b) is intended to afford diligent debtors.

Nor do we accept as cause the assertion that the estate would benefit from confirmation of a GRS plan as an alternative to lift of stay should confirmation of the Resort's plan be denied. Should the stay be lifted, the hotel would still be property of the estate with the Resort still subject to and bound by the requirements and responsibilities of the Bankruptcy Code and Rules. In fact this state of affairs would likely continue until expiration of the redemption period. This also should be no surprise to GRS which chose to steer the litigation in this direction.

Finally, the court returns to the policy of encouraging consensual reorganizations. The court is convinced that if a creditor plan is filed now confirmation of either plan will occur only after cram down. On the other hand, the Resort's best hope of obtaining confirmation is reaching a meeting of the minds with GRS. Given the good faith and diligence which the Resort has demonstrated within the chapter 11 process, the court believes that the path to a successful negotiated reorganization is still open. The court therefore holds that GRS has failed to carry its burden of establishing cause. The motion of GRS to shorten the exclusivity period is denied.