**In re ASPEN LIMOUSINE SERVICE, INC., d/b/a Vans to Vail, Inc., and Vans to Breckenridge, Inc., a Colorado corporation, Debtor.**

**Bankruptcy No. 95–14489–SBB.**

United States Bankruptcy Court, D. Colorado.

Oct. 25, 1995.

Nunc pro tunc Sept. 14, 1995.

Michael E. Katch, Katch, Sender & Wasserman, P.C., Denver, CO, for Debtor.

Edward T. Ramey, Isaacson, Rosenbaum, Woods & Levy, P.C., Denver, CO, for Airport Shuttle Colo., Inc.

Tom H. Connolly, Connolly & Halloran, P.C., Boulder, CO, for Unsecured Creditors' Committee.

Jay Hopkins, Boulder, CO, for Wage Earners' Committee.

Leo M. Weiss, Office of the U.S. Trustee, Denver, CO.

Thomas F. Quinn, Jones & Keller, P.C., Denver, CO, for Colo. Mtn. Exp., Inc.

David M. Rich, Clanahan, Tanner, Downing & Knowlton, P.C., Denver, CO, for Jerald Barnett.

Kenneth F. Tamplain, Jr., Adams & Reese, New Orleans, LA, for Robert Regulski, Harvey Gilmore, and Phillip Sullivan.

Duncan E. Barber, Holme Roberts & Owen, LLC, Denver, CO, for Pitkin Cty. Bank & Trust.

## OPINION AND ORDER

SIDNEY B. BROOKS, Bankruptcy Judge.

THIS MATTER comes before the Court on the "Motion for Forthwith Conditional Approval of Creditor's Disclosure Statement and Ballot" filed by creditor Colorado Mountain Express ("CME") on September 5, 1995, and the Objections thereto filed by the Debtor on September 7, 1995, and Robert Regulski, Harvey Gilmore, and Phillip Sullivan (collectively, the "Principals") on September 13, 1995. The Court, having reviewed the file, conducted a hearing, and being advised in the premises, entered an Order on September 25, 1995 based upon the oral findings and conclusions set forth on the record at the hearing on this matter. This Court reserved the right at that hearing to issue this Opinion to more fully and accurately state the legal issues raised and the Order entered herein.

The issues before the Court are ones of first impression involving the accelerated and streamlined treatment of small business debtors in Chapter 11. Competing plans of reorganization and disclosure statements have been filed by the Debtor-in-Possession and the Debtor's principal competitor, CME, which also happens to be a creditor and litigation adversary.[1] CME wants its competing plan of reorganization, essentially a liquidation plan, to be given the same accelerated, favorable treatment accorded to the Debtor under the new provisions of the Bankruptcy Code which are designed to assist small businesses in reorganizations. The Debtor-in-Possession and its Principals vigorously oppose CME's request.

### Questions Presented.

The principal questions before this Court are as follows: (1) may CME file and mail to creditors its competing plan of reorganization and solicit ballots on the same expedited timetable as the Debtor, pursuant to 11 U.S.C. §§ 1121(e) and 1125(f); (2) to what extent, if any, does a small business debtor have an exclusive period of time within which to file and solicit acceptances or rejections of plans under the small business election procedure; and (3) how may the seemingly irreconcilable plan, disclosure and confirmation hearing provisions of 11 U.S.C. §§ 1121(e) and 1125(f) be reconciled?

The appropriate answers, as this Court is able to determine them, are as follows:

(1) After the Debtor's exclusive 100–day period to file a plan and disclosure statement, the Creditor, CME, may file and mail to creditors its competing plan on an *expedited* basis, but only on a time line, or on conditions, specified by the Court. There is no unqualified, unlimited right for a creditor to file a competing plan under 11 U.S.C. § 1121(e) and have it treated in an expedited, streamlined fashion and on a track concurrent with the Debtor's plan;

(2) A debtor has an exclusive right to file a plan and disclosure statement, but only for the 100–day period specified in 11 U.S.C. § 1121(e)(1). Thereafter, the Debtor does not have a statutorily-

---

1. The Debtor–in–Possession is joined by Airport Shuttle Colorado, Inc., as Proponent in the Debtor's Plan and Disclosure Statement.

mandated exclusive period of time to mail the plan and conditionally-approved disclosure statement, and solicit acceptances; the exclusive period may, however, be extended by the Court;

(3) The inconsistencies found in Sections 1121(e) and 1125(f) cannot be completely and satisfactorily reconciled; reference to Section 105(d) is necessary.

### Factual Background.

1. The Debtor filed a Voluntary Petition pursuant to Chapter 11 of the Bankruptcy Code on May 5, 1995. By way of a Notice filed August 14, 1995, the Debtor elected to be treated as a "small business" debtor as defined in 11 U.S.C. § 101(51C).

2. The Debtor timely filed its plan and disclosure statement pursuant to 11 U.S.C. § 1121(e)(1) on August 9, 1995 and August 17, 1995 respectively. The plan and disclosure statement were amended on September 1, 1995 and this Court presently has before it the Debtor's First Amended Plan of Reorganization, as modified on September 11, 1995.

3. This Court conditionally approved the Debtor's disclosure statement at a hearing on September 5, 1995, pursuant to 11 U.S.C. § 1125(f)(1), and set the final disclosure statement hearing and the hearing on confirmation of the Debtor's plan for October 10, 1995.

4. The Debtor immediately mailed to all creditors and parties-in-interest its Amended Plan, Disclosure Statement, the Court's Order Conditionally Approving the Disclosure Statement and Setting Confirmation Date, and Ballot.[2]

5. CME is a business competitor and minor creditor of the Debtor. On September 5, 1995, slightly more than 100 days after the Debtor filed its Chapter 11 Petition, CME filed a competing Creditor's Liquidating Plan of Reorganization, a disclosure statement, and the instant Motion. 11 U.S.C. § 1125(f).

6. After CME filed its liquidating Plan, one which pays all creditors 100% of their claims, the Debtor amended its Plan to pay creditors 100% of their claims, as well.

7. By way of the instant Motion, CME requests the same, expedited conditional approval for its own, competing, disclosure statement pursuant to 11 U.S.C. § 1125(f)(1). CME argues that nothing in the Bankruptcy Code or its legislative history limits the benefits of the "small business" election solely to a debtor itself. Instead, CME maintains, the election is designed to apply to a debtor's *case* and to benefit a debtor's *estate*, which includes all creditors and parties in interest, not just the debtor itself. Additionally, following conditional approval of its own disclosure statement, CME wants to be allowed to distribute copies of the plan and disclosure statement to creditors prior to the voting deadline on the Debtor's plan. CME envisions a situation where creditors can review and weigh the benefits of both plans simultaneously and then, presumably, cast their votes in favor of one plan or the other.

8. In response, the Debtor[3] argues that the Bankruptcy Code protects the rights of a "small business" debtor to an extended, or 180–day, exclusive period during which a competing plan cannot be filed, or if one can be filed, still acceptances and rejections cannot be solicited by proponents of the competing plan. *See,* 11 U.S.C. 1121(c)(3). The Debtor maintains that this Court cannot approve CME's disclosure statement, conditionally or otherwise, and allow the dissemination of the competing plan, disclosure statement, and solicitation of votes, unless, or until, the Debtor's own pending plan is not confirmed, or the 180–day exclusive period expires.

### Discussion.

9. It appears, from this Court's examination, that there are no reported cases in this

---

**2.** The small business Debtor–in–Possession advised the Court that the mailing cost approximately $20,000.00.

**3.** The Principals have also filed a Objection to the instant Motion, pointing out certain perceived substantive failures and arguing against approval on the basis that the concomitant plan

is not confirmable. Based on the ruling herein, this Court need not address the alleged substantive deficiencies and the balance of the Principals' arguments go more to the issue of confirmation and, likewise, need not be addressed at this time.

or any other District which either interpret or apply 11 U.S.C. §§ 101(51C),[4] 105(d)(2), 1121(e), or 1125(f).

 10. Underlying the Bankruptcy Code is the general principle that an honest and diligent debtor should be given a first opportunity to get a plan confirmed and do so in the most cost-effective manner possible. This principle certainly applies with equal force and purpose to a "small business" debtor. *See, generally, In re Grand Traverse Development Co. Ltd. Partnership*, 147 B.R. 418, 421 (Bankr.W.D.Mich.1992) (The § 1121(b) exclusive period is intended to afford protection to diligent debtors.); *In re Masterworks, Inc.*, 100 B.R. 149, 152 (Bankr. D.Conn.1989) (One of the principal objectives of bankruptcy policy is to provide honest debtors with a reasonable opportunity for a fresh economic start. Toward that end, Chapter 11 debtors are given a variety of advantages to facilitate their rehabilitation efforts. For example, debtors are given an exclusive period to file a plan.); *In re North Redington Beach Associates, Ltd.*, 91 B.R. 166, 169 (Bankr.M.D.Fla.1988) (Both § 1121(d) and (e)(3) can be used as tools to assure that the imbalance between the debtor and secured creditors which characterized the cases under the old Chapter XI is not reinstituted and § 1121 as a whole was designed by Congress to limit the delays that made creditors hostages of Chapter 11 debtors.).

 11. Under the provisions of the Bankruptcy Code, this Court is given a measure of discretion in managing the confirmation process. *See*, 11 U.S.C. §§ 105(d)(2), 1121(b), (d), (e)(3) and 1125(f). Rule 3016(a), Fed.R.Bankr.P. *In re Sharon Steel Corp.*, 78 B.R. 762, 763–765 (Bankr.W.D.Pa.1987). *See, generally, U.S. v. Energy Resources Co., Inc.*, 495 U.S. 545, 549–551, 110 S.Ct. 2139, 2142–2143, 109 L.Ed.2d 580 (1990) (stands for the following principles: (1) the bank-

ruptcy court has broad equitable power to resolve debtor/creditor matters; (2) its equitable power is limited by specific provisions in the Bankruptcy Code and other federal laws that should be considered before exercising this power; and (3) absent specific conflicts in the Bankruptcy Code and federal law, a debtor has broad discretion to deal with its creditors through the plan process, provided its actions are necessary for a successful reorganization, and the bankruptcy court has the equitable power to approve such plans).[5]

 12. An analysis of a statute should begin with the language of the statute itself. *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568, 99 S.Ct. 2479, 2485, 61 L.Ed.2d 82 (1979) (cases cited). If the language is unambiguous, it ought to be applied as written without further resort to legislative history. *Central Trust Co., Rochester, N.Y. v. Official Creditors' Committee of Geiger Enterprises, Inc.*, 454 U.S. 354, 359–360, 102 S.Ct. 695, 698, 70 L.Ed.2d 542 (1982). If statutory language is ambiguous, resort to the legislative history is appropriate so that the statute can be interpreted to effect its evident purpose and be consistent with legislative intent. *Rocky Mountain Oil and Gas Ass'n v. Watt*, 696 F.2d 734 (10th Cir.1982). Statutes in *pari materia* are, as far as possible, to be interpreted to give effect to both. *Morton v. Mancari*, 417 U.S. 535, 551, 94 S.Ct. 2474, 2483, 41 L.Ed.2d 290 (1974).

13. The applicable statutory language in this situation—Sections 105(d), 1121(e) and 1125(c)—is, in certain respects, ambiguous and inconsistent.

14. The 1994 Bankruptcy Reform Act made a number of changes in Chapter 11 to afford special treatment to a small business undergoing reorganization. Essentially, the purpose of the changes was to make the reorganization process more expeditious, less complex and less expensive. The changes (1)

---

**4.** *But, see, In re Foundation for New Era Philanthropy*, 1995 WL 478841, *7, n. 4 (Bankr.E.D.Pa. 1995) (reference is made to 11 U.S.C. § 101(51)(C) [sic], although it is not applied).

**5.** For examples of cases where multiple plans are allowed to proceed toward confirmation concurrently, *see, In re Cara Corp.*, 148 B.R. 760 (Bankr.

E.D.Pa.1992); *In re First Humanics Corp.*, 124 B.R. 87, 93 (Bankr.W.D.Mo.1991) (competing plans distributed together with a jointly prepared cover letter); *In re Cramer, Inc.*, 100 B.R. 63 (Bankr.D.Kan.1989); *In re Evans Products Co.*, 62 B.R. 173 (Bankr.S.D.Fla.1986).

authorize the Court to exercise more control over case procedure to facilitate effective case management, (2) enable a court to accelerate and consolidate the hearings on the disclosure statement and plan confirmation, (3) shorten the exclusive time for filing a plan, and (4) affect the committee structure, making it likely that no committee of unsecured creditors will be appointed.[6] *See, generally,* 5 *Collier on Bankruptcy,* ¶ 1121.05 (15th Ed.1995).

15. Inexplicable and seemingly absurd results may occur when all of the time lines and rights afforded to small business debtors and creditors, or other parties in interest, by Sections 1121 and 1125 are applied. Problems and unsatisfactory results can arise when trying to precisely and faithfully apply the literal terms of Sections 1121 and 1125. This is best illustrated by considering Section 1121(c) (providing a debtor with a 120–day exclusive period to file a plan and 180 days to gain acceptance[7]) and 1121(e) (providing a small business debtor with a 100–day exclusive period to file a plan and mandating that **all** plans must be filed within 160 days[8]). A debtor is, thus, granted a 180–day exclusive period to solicit acceptance of its plan in Section 1121(c)(3), yet "all [small business debtor] plans shall be filed" within 160 days (§ 1121(e)(2)). When may a competing plan then be filed?[9] Clearly it was not the intent of the drafters to automatically exclude the possibility of competing plans after the debt-

or's initial 100–day exclusive period, as argued by the Debtor, here.

■ 16. The language used in Section 1125(f) and the House Report accompanying the 1994 Amendments suggest, but certainly do not mandate, that a debtor-in-possession is the primary object and beneficiary of the 1994 Amendments. The effort to streamline, simplify, and reduce costs of small business reorganizations is intended to benefit, principally, but not exclusively, the small business debtor. Insofar as the right to advance a plan is concerned, other parties are certainly intended to be beneficiaries of the streamlined and simplified procedures, but in a slightly less substantial and direct manner than the small business debtor.[10]

17. This Court disagrees with CME's principal position that Section 1121(e) is separate, independent, and essentially completely unaffected by Sections 105(d), 1121(a), (b), and (c), and 1125(f). The Court, thus, rejects CME's argument that its rights, and the Debtor's rights, to file a plan and disclosure statement for a small business debtor are defined and controlled exclusively by Section 1121(e).

■ 18. Further, this Court rejects CME's contention that a small business debtor-in-possession, here Aspen Limousine, is strictly limited to its rights under Section 1121(e)(1), the 100–day exclusive period.

---

**6.** In practice, a committee is rarely appointed in a smaller case. *See,* 11 U.S.C. § 1102(a)(3).

**7.** These periods are subject to adjustment under certain circumstances. 11 U.S.C. § 1121(d).

**8.** These periods are also subject to adjustment under certain circumstances. 11 U.S.C. § 1121(e)(3).

**9.** This Court also notes, that while not directly at issue in the matter *sub judice,* Section 1125(f)(2) provides, in part, that acceptances and rejections of a plan may be solicited based on a conditionally-approved disclosure statement "as long as the *debtor* provides adequate information" therein. (emphasis added) This Court ponders the application of this provision to a case wherein a *creditor* has proposed a plan, either in addition to or in the absence of a debtor's plan.

**10.** *See,* HRRep 103–835, 103rd Cong., 2nd Sess. 50 (Oct. 4, 1994); 140 Cong.Rec. H10768 (Oct. 4, 1994) ("This section amends title 11 to expe-

dite the process by which small businesses may reorganize under chapter 11.... A qualified small business debtor who elects coverage under this provision would be permitted to dispense with creditor committees; would have an exclusivity period for filing a plan of 100 days; and would be subject to more liberal provisions for disclosure and solicitation of acceptances for a proposed reorganization plan under Code section 1125. This section permits an extension with respect to the debtor's original filing time if the debtor shows there were circumstances beyond its control."). *See, generally,* Claude D. Montgomery & Edward M. Holtzman, *Disclosure Statements and Plan Acceptance,* 715 PLI/Comm 855 (April–May 1995); Hon. Arthur B. Federman, *The Bankruptcy Reform Act of 1994,* 51 J.Mo.B. 105, 107–108 (March–April 1995); C. Daniel Motsinger, *The Bankruptcy Reform Act of 1994: New Mines in the Minefield,* 38 DEC Res-Gestae 16 (Dec. 1994).

This Court does not agree with CME that after the 100–day period, all creditors and parties-in-interest have a carte blanche opportunity to file plans, obtain accelerated and conditional approval of disclosure statements, and solicit ballots for competing plans on an expedited basis parallel, or concurrent, with the debtor's plan. Such an interpretation could certainly make the small business election more complex, more costly, more time consuming, and less attractive than intended, thus frustrating Congress' intent.

19. Similarly, this Court does not accept the Debtor's position that a debtor has a full 180–day exclusive period, pursuant to 11 U.S.C. § 1121(c)(3), to solicit plan acceptances of a timely-filed plan and conditionally-approved disclosure statement. Such an interpretation would make the small business procedure, designed to be more streamlined, accelerated, and less costly, a more cumbersome, delayed, and expensive procedure. Moreover, if the Debtor were given an exclusive 180–day period to solicit acceptances, the debtor would be improperly insulated from competing plans, a result clearly inconsistent with the language and intent of Section 1121(e)(2) and (3).

20. Accepting the Debtor's position that it has an extended exclusive period to solicit acceptances would also substantially deprive the Court of a good measure of its statutory discretion.

21. Section 105(d)(2)[11] provides, generally, rather substantial flexibility and latitude for the Court to designate, or adjust, the Chapter 11 plan, disclosure statement, and confirmation time lines and procedure. Section 105, coupled with the terms of Sections 1121 and 1125, suggests that this Court can look to equitable factors to fix a time schedule as may be necessary to keep the process fair, fast, effective, and efficient.

22. Section 105(d)(2) lets this Court "mix and match" the opportunities and timing for a debtor, creditors, and parties-in-interest, to file plans and disclosure statements, and solicit acceptances of such plans. It is an omnibus provision with which the Court can customize Chapter 11 preconfirmation procedures, as long as those procedures are not inconsistent with other provisions of the Code. Thus, the Court is authorized to use Section 105(d)(2) options as long as they don't conflict with Sections 1121 and 1125.

23. Based on those three sections of the Code, the Court will, here, adopt a preconfirmation schedule which gives primacy, or a headstart, to the Debtor's Plan and Disclosure Statement (which is already conditionally approved and mailed to all creditors), but which allows the creditor's plan and disclosure statement to also be conditionally approved and treated on an accelerated basis, albeit not on a parallel, or concurrent, schedule with the Debtor's Plan.

24. This sequential process for final disclosure statement approval and confirmation hearing satisfies the literal provisions of the Code and the intent of Congress. It also, not incidentally, provides an incentive for the Debtor to move swiftly and effectively ahead with its 100% payment plan, and a great benefit to the creditors in that they will have

---

11. Section 105(d)(2), Title 11, United States Code, provides that a court, on its own motion or on the request of a party in interest, may unless inconsistent with another provision of this title or with applicable Federal Rules of Bankruptcy Procedure, issue an order at any such [status] conference prescribing such limitations and conditions as the court deems appropriate to ensure that the case is handled expeditiously and economically, including an order that—
 (A) sets the date by which the trustee must assume or reject an executory contract or unexpired lease; or
 (B) in a case under chapter 11 of this title—
 (i) sets a date by which the debtor, or trustee if one has been appointed, shall file a disclosure statement and plan;
 (ii) sets a date by which the debtor, or a trustee if one has been appointed, shall solicit acceptances of a plan;
 (iii) sets the date by which a party in interest other than a debtor may file a plan;
 (iv) sets a date by which a proponent of a plan, other than the debtor, shall solicit acceptances of such plan;
 (v) fixes the scope and format of the notice to be provided regarding the hearing on approval of the disclosure statement; or
 (vi) provides that the hearing on approval of the disclosure statement may be combined with the hearing on confirmation of the plan.
11 U.S.C. § 105(d)(2).

an alternative, or back-up, 100% payment plan immediately available if the Debtor falters, or cannot promptly get its plan confirmed.

*Conclusion.*

Accordingly, it is

ORDERED that the "Motion for Forthwith Conditional Approval of Creditor's Disclosure Statement and Ballot" filed by CME on September 5, 1995 is GRANTED, IN PART, and DENIED, IN PART.

IT IS FURTHER ORDERED that a full hearing on the merits of CME's Motion for Conditional Approval of its Disclosure Statement is hereby scheduled to commence at **1:30 p.m. on Tuesday, September 26, 1995, in Courtroom E,** United States Bankruptcy Court for the District of Colorado, U.S. Custom House, 721 19th Street, Denver, Colorado 80202–2508.[12]

---

**12.** This Opinion is written after the Court hearing and oral ruling from the bench on the CME Motion.