**In re AMSTER YARD ASSOCIATES, Debtor.**

**Bankruptcy No. 97 B 45025 (SMB).**

United States Bankruptcy Court, S.D. New York.

Nov. 7, 1997.

Ira Herman, Herzfeld & Rubin, P.C., New York City, for Praedium II Maricopa, L.L.C..

Nicholas T. Donovan, Donovan & Giannuzzi, New York City, for Debtor.

Paul Schwartzberg, Office of U.S. Trustee, New York City.

## MEMORANDUM DECISION AND ORDER DENYING EX PARTE APPLICATION TO PRELIMINARILY APPROVE DISCLOSURE STATEMENT AND FOR RELATED RELIEF

STUART M. BERNSTEIN, Bankruptcy Judge.

The debtor, a limited partnership, filed this chapter 11 case on July 29, 1997. Its principal asset is a building located at 211 East 49th Street, New York, New York (the "Building") which the debtor's schedules value at $5 million. In addition, the schedules identify a bank account and rent receivables, aggregating $323,220.00, in the hands of a state court-appointed receiver. On the liability side, the schedules identify ten creditors. Praedium II Maricopa, LLC ("Maricopa") holds a claim in the sum of $5,275,000.00 secured by a first mortgage on the Building. The New York City Department of Finance holds an unsecured, non-priority claim in the sum of $300.00. Eight other entities are listed as unsecured creditors holding claims in unknown amounts.

Maricopa has filed a plan and disclosure statement. The plan provides for the transfer of the Building to Maricopa, the satisfaction, in full, of the general unsecured claims[1], and the payment of $200,000.00 to the debtor. Maricopa, the plan proponent, is impaired and entitled to vote. The unsecured creditors are also impaired because they will receive 100% of their claims without postpetition interest.[2] Maricopa now asks me to "preliminarily approve" its disclosure statement to permit immediate solicitation, combine the disclosure statement and confirmation hearings, and grant related relief.

## DISCUSSION

The threshold issue raised by Maricopa's application is whether I can preliminarily approve the disclosure statement, and thereby authorize it to solicit acceptances to its plan prior to the actual hearing on the approval of the disclosure statement. Section 1125(b)[3] precludes postpetition solicitation of an acceptance or rejection of the plan until the court has approved the disclosure statement after notice and a hearing, and the

---

1. The disclosure statement incorrectly states that the amount of unsecured claims is $0. The schedules identify the aforementioned $300 debt as well as eight unliquidated debts, and the deadline for filing claims does not expire until December 8, 1997.

2. The disclosure statement erroneously states that the class of unsecured creditors is unimpaired.

3. Section 1125(b) provides:
   An acceptance or rejection of a plan may not be solicited after the commencement of the case under this title from a holder of a claim or interest with respect to such claim or interest

proponent has transmitted the plan (or a summary) and the approved disclosure statement to the creditor. Although "notice and a hearing" means such notice and hearing as is appropriate under the particular circumstances, 11 U.S.C. § 102(1), the procedure adopted by Maricopa provides for neither. Maricopa implicitly concedes the inadequacy of the proposed procedure. It seeks only preliminary approval now, and asks me to schedule a full blown hearing—on the same day as the confirmation hearing—at which I can "finally" determine whether the disclosure statement contains "adequate information."

Maricopa's bifurcated approval procedure is a fiction designed to permit solicitation prior to the approval of the disclosure statement, a practice expressly proscribed by section 1125(b). Yet the 1994 bankruptcy amendments provide some support for the practice. In "small business" cases, the court can conditionally-approve the disclosure statement, permit solicitation, and combine the two hearings. 11 U.S.C. § 1125(f).[4] This is not, however, a "small business" case.

In addition, 11 U.S.C. § 105(d) seems to implicitly authorize the procedure. It permits the court to combine the two hearings, a practice that makes no sense unless the parties can solicit acceptances and rejections prior to the combined, confirmation hearing. Section 105(d) provides in relevant part:

The court, on its own motion or on the request of a party in interest, may—

(1) hold a status conference regarding any case or proceeding under this title after notice to the parties in interest; and

(2) unless inconsistent with another provision of this title or with applicable Federal Rules of Bankruptcy Procedure, issue an order at any such conference prescribing such limitations and conditions as the court deems appropriate to ensure that the case is handled expeditiously and economically, including an order that—

. . . .

(B) in a case under chapter 11 of this title—

. . . .

(vi) provides that the hearing on approval of the disclosure statement may be combined with the hearing on confirmation of the plan.

Section 105(d) is limited, however, by its terms. The court cannot make an order that is inconsistent with the Bankruptcy Code or Rules. "An order combining the disclosure statement and confirmation hearings is inconsistent with Section 1125 except in prepackaged cases or 'small business' cases." 2 Lawrence P. King, *et al.*, *Collier on Bankruptcy* ¶ 105.08, at 105–83 to 105–84 (rev. 15th ed.1997); *accord* 4 William L. Norton, Jr., *Norton Bankruptcy Law & Practice* 2d § 91:16, at 89 (Supp. Aug. 1996); David G. Epstein, *Basics of Bankruptcy: Plan Acceptance and Disclosure*, 746 PLI/Comm 593, 603 (1996); *see In re Aspen Limousine Serv., Inc.*, 187 B.R. 989, 995 (Bankr.D.Colo.1995), *aff'd*, 193 B.R. 325 (D.Colo.1996). Accordingly, section 105(d) does not authorize me to preliminarily approve the disclosure statement subject to a final hearing, or under the circumstances of this case, combine the disclosure statement and confirmation hearings.[5]

---

unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information. The court may approve a disclosure statement without a valuation of the debtor or an appraisal of the debtor's assets.

4. Section 1125(f) provides as follows:
Notwithstanding subsection (b), in a case in which the debtor has elected under section 1121(e) to be considered a small business—
(1) the court may conditionally approve a disclosure statement subject to final approval after notice and a hearing;

(2) acceptances and rejections of a plan may be solicited based on a conditionally approved disclosure statement as long as the debtor provides adequate information to each holder of a claim or interest that is solicited, but a conditionally approved disclosure statement shall be mailed at least 10 days prior to the date of the hearing on confirmation of the plan; and
(3) a hearing on the disclosure statement may be combined with a hearing on confirmation of a plan.

5. This does not mean that a court can never combine the disclosure statement and confirmation hearings. Unimpaired classes are deemed to accept the plan, and their votes need not be

Furthermore, even if a court can preliminarily approve a disclosure statement, it should exercise this power sparingly. Preliminary approval comes after the court's *ex parte* review. This is not the best or most efficient approach. The United States Trustee, the creditors and the other parties in interest are more familiar than the court with the case, and are more likely to spot inaccuracies and deficiencies. In addition, participants in the case should· have the chance to review the proposed disclosure statement, raise potential objections with the plan proponent, negotiate necessary changes, and present a "cleaner," amended disclosure statement for judicial approval. Collapsing the two hearings into one does not prevent this. Still, human nature being what it is, plan proponents will be less willing to make modifications that could nullify votes they have already solicited. Further, courts may be reluctant to delay confirmation based on shortcomings that might have foreclosed approval of the disclosure statement if the hearings had not been combined. *Cf. In re Rogers–Pyatt Shellac Co.,* 51 F.2d 988, 992 (2d Cir.1931) (professionals must be retained by the court before they render services to permit consideration of disqualifying relationships "unaffected by the emotional pressure which inevitably arises in their favor after the services have been rendered").

Finally, it is not unfair for Maricopa to bear the additional time and expense of complying with section 1125(b). Maricopa and the debtor could have done their deal outside of bankruptcy. The debtor could have delivered a deed in lieu of foreclosure, or permitted Maricopa to foreclose. A non-bankrupt-cy resolution would not prejudice the handful of creditors who can look to the debtor's general partner for satisfaction of their claims.

Maricopa and the debtor nevertheless prefer this bankruptcy, which appears to have been a collaborative effort. Bankruptcy may be preferable because a deed in lieu of foreclosure will not cut off junior interests,[6] and a judicial foreclosure will take too long. Further, transferring the Building pursuant to a plan will avoid stamp and similar taxes. *See* 11 U.S.C. § 1146(c).

Having elected chapter 11, they must suffer its warts and barnacles. Maricopa has not identified any emergent circumstances that warrant expedited action, and as a practical matter, it could not obtain approval of the disclosure statement, solicit votes or confirm a plan until it has defined the outer universe of potentially allowable claims. The deadline for filing claims does not expire for another month, and during this period, Maricopa has ample time to obtain judicial approval of the disclosure statement through the traditional route.

For the all the foregoing reasons, I decline to sign Maricopa's order preliminarily approving the disclosure statement and for related relief.

So ordered.

---

solicited. 11 U.S.C. § 1126(f). If all classes are unimpaired and no solicitation is required, the court does not have to approve a disclosure statement prior to confirmation, if ever.

In addition, if Maricopa were the only impaired class under its plan, I could presumably schedule the confirmation vote to take place at the conclusion of the disclosure statement hearing. *See* Fed. Bankr.R. 3017(c). In that event, I could approve the disclosure statement, and after a brief recess to permit Maricopa to cast its accepting vote and certify the ballot, hold the confirmation hearing. Maricopa would not object to the expedited procedure. However, Maricopa's plan impairs the unsecured creditors who are also entitled to vote. Maricopa must, there-fore, obtain approval of the disclosure statement, transmit the approved disclosure statement and the plan (or plan summary) to each claim holder, and give each claim holder a reasonable amount of time to examine these documents and decide how to vote.

**6.** It is not clear whether there are any tenants in the Building. The disclosure statement and schedules do not identify any tenants or rental income. Yet according to the debtor's schedules, the receiver is holding $270,000.00 in cash and $53,220.00 in "rent receivables." These assets suggest rental income, and hence, tenants. Moreover, the parties have entered into a cash collateral stipulation, and the rents are the only cash collateral in the case.