### In re SHARON STEEL CORPORATION, Debtor.

**Bankruptcy No. 87–207E. Motion No. 87–808.**

United States Bankruptcy Court, W.D. Pennsylvania.

Oct. 21, 1987.

---

Douglas A. Campbell, Pittsburgh, Pa., and Steven M. Pesner, New York City, for debtor.

Philip E. Beard, Pittsburgh, Pa., and Herbert Minkel, Jr., New York City, for Committee of Unsecured Creditors.

## OPINION

WARREN W. BENTZ, Bankruptcy Judge.

This court denied the debtor's first "Motion for extension of Time in which debtor shall have the exclusive right to file a plan of reorganization" (the "Motion") by order dated August 19, 1987. This opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rule 7052 made applicable under Bankruptcy Rule 9014.

We are aware that this case may be larger and more complex than other chapter 11 cases where the initial 120 day exclusivity period has been extended. However, for the reasons discussed below, we conclude that the debtor's Motion must be denied.

On April 17, 1987, Sharon Steel Corporation ("Sharon") filed for relief under Chapter 11 of the Code. Sharon has continued in the management and operation of its business and property as a debtor-in-possession. On August 4, 1987, Sharon filed its Motion to extend the exclusivity period. The Official Committee of Unsecured Cred-itors (the "Committee") timely filed an objection and a hearing was held thereon on August 14, 1987.

The parties have not directed our attention to, nor are we aware of, any case where a debtor has failed to establish sufficient cause to extend the original 120 day exclusivity period. Indeed, most of the cases submitted involve a situation where several extensions have previously been granted before a further extension has been challenged. E.g., *Teachers Insurance and Annuity Association v. Lake in the Woods (In re Lake in the Woods)*, 10 B.R. 338 (Bankr.E.D.Mich.1981); *In re Manville Forest Products Corp.*, 31 B.R. 991 (Bankr.S.D.N.Y.1983); *In re Trainer's Inc.*, 17 B.R. 246 (Bankr.E.D.Pa.1982). Many of the decisions which have addressed § 1121(d) are based on the facts of the individual case. This result follows from the plain language of § 1121(d). The decision whether or not to extend the debtor's period of exclusivity rests within the discretion of the court.

11 U.S.C. § 1121(d) states:

> On request of a party in interest made within the respective periods specified ... and after notice and a hearing, the court may for cause ... increase the 120 day period (in which the debtor has the exclusive right to file a plan).

There are two key operative phrases within § 1121(d). The court "may" and "for cause" extend the exclusivity period. The use of the term "may" instead of "shall" clearly allows the bankruptcy court great latitude in the exercise of its discretion whether or not to extend the exclusivity period. In exercising its discretion, the court *may* extend the exclusivity period if sufficient cause is shown. Conversely, the court *may* refuse to extend the exclusivity period even if there is a showing of cause.

The second operative phrase within § 1121(d), "for cause" means that the court may only exercise its discretion after a party in interest establishes sufficient cause. The absence of an adequate definition of the phrase "for cause" in this matter is significant. In essence, Congress has left the meaning of the phrase "for

cause" to be determined by the facts and circumstances in each individual case.

The legislative history supports this position. Chapter X of the Bankruptcy Act provided a corporate reorganization procedure for large corporations. 6 *Collier on Bankr.* (MB) ¶ 0.12 (14th ed. 1978). Chapter XI also provided a means for corporate debtors to obtain relief. However, Chapter XI only provided a method for the arrangement of unsecured debts. It did not purport to deal with secured debts or stock interests. *Id.*

Under Chapter X of the Act, the appointment of a trustee was mandatory if the debtor's indebtedness was greater than $250,000. 11 U.S.C. § 556 (1976) (repealed 1978). If the indebtedness was less than $250,000, the debtor could be continued in possession. 6 *Collier on Bankr.* (MB) ¶ 10.09 (14th ed. 1978). If a large company filed under Chapter X, it would lose control of the business. In addition, applicable financial rules restricted the possibilities for negotiating and formulating a plan.

Many debtors were discouraged from filing for reorganization under Chapter X because of the loss of control. The management of the debtor knew that under Chapter X, it would immediately lose control of the business and its future to a trustee. The trustee and any other party in interest, including a creditor, could propose a plan. H.R.Rep. No. 595, 95th Cong., 2nd Sess., 231 (1978) *reprinted in* 1978 *U.S.Code Cong. & Ad.News,* 5787, 5963, 6191.

Under Chapter XI of the Act, only the debtor could file a "plan of arrangement." Under this alternative, creditors were excluded from filing a plan. As the House Committee Report indicated:

> [This] exclusive right gives the debtor undue bargaining leverage, because by delay he can force a settlement out of otherwise unwilling creditors, and they have little recourse except to move for conversion of the case to Chapter X. That is contrary to their interests as it is to the debtor's, and thus is rarely done. The debtor is in full control, often to the unfair disadvantage of creditors.

H.R.Rept. No. 595, 95th Cong., 2nd Sess., 231 (1978) *reprinted in* 1978 *U.S.Code Cong. & Ad.News,* 5963, 6191.

Chapter 11 of the Code replaced former Chapters X and XI and represents a workable compromise to insure fairness to all involved. § 1121 represents one aspect of this compromise by defining who may file a plan and when they may do so. This section was designed to strike a balance between the rights and obligations of a debtor in possession and its creditors. Congress intended the balance to lead to efficient negotiations and appropriate administration of the Chapter 11 case. *See In re Tony Downs Foods Co.,* 34 B.R. 405, 407 (Bankr.D.Minn.1983). The House Committee Reports exemplifies the principle:

> Proposed Chapter 11 recognizes the need for the debtor to remain in control to some degree, or else debtors will avoid the reorganization provisions in the bill until it would be too late for them to be an effective remedy. At the same time, the bill recognizes the legitimate interests of creditors, whose money is in the enterprise as much as the debtor's, to have a say in the future of the company. The bill gives the debtor an exclusive right to propose a plan for 120 days. In most cases, 120 days will give the debtor adequate time to negotiate a settlement, without unduly delaying creditors.

H.R.Rep. No. 595, 95th Cong., 2nd Sess., 231–32 (1978) *reprinted in* 1978 *U.S.Cong. & Ad.News,* 5963, 6191.

Indeed, the House Committee Report sets forth some direction as what might constitute "cause" in an individual case:

> In most cases, 120 days will give the debtor adequate time to negotiate a settlement without unduly delaying creditors. The court is given the power, though, to increase ... the 120 day period depending on the circumstances of the case. For example, if an unusually large company were to seek reorganization under Chapter 11, the court would probably need to extend the time in order to allow the debtor to reach an agreement. If, on the other hand, a debtor delayed in arriving at an agreement, the court could ...

permit creditors to formulate and propose a reorganization plan. Again, the bill allows the flexibility for individual cases that is unavailable today.

H.R.Rep. No. 595, 95th Cong., 2nd Sess., 232 (1978) *reprinted in* 1978 *U.S.Cong. & Ad.News*, 5963, 6191. Thus, the court is granted broad discretion to determine what is sufficient cause in each individual case.

Even if the court is satisfied that sufficient cause may exist, the court may still deny an extension of the exclusivity period as we have discussed previously. This may occur where, although a company seeking reorganization is unusually large, the debtor has delayed in arriving at an agreement or is attempting to pressure other parties to yield to a position which is necessarily prejudicial. Again, the decision is within the sound discretion of the bankruptcy court.

Having concluded that it is in the court's discretion to determine whether the debtor has established sufficient cause to justify an extension of the exclusivity period as well as concluding that it is also in the court's discretion to grant or deny an extension notwithstanding a sufficient showing of cause, we address the arguments before us.

Sharon argues that it has been delayed by extensive negotiations in several key areas, including: collective bargaining agreements; working capital and blast furnace refinancing; obligations to the Pension Benefit Guaranty Corporation ("PBGC"); and Internal Revenue Service ("IRS") waivers relating to unpaid annual pension contributions. Sharon asserts that these items have required concentrated efforts during the initial 120 days. Sharon further alleges that great progress has been made in these negotiations. Finally, Sharon argues that, due to the size and complexity of the case, much of the initial exclusivity period has been devoted to general administrative matters that attend any bankruptcy filing. Therefore, Sharon argues that the exclusivity period should be extended because more time is needed to resolve these matters before a feasible plan of reorganization can be formulated.

The Committee argues that Sharon has failed to demonstrate that cause exists for an extension of the exclusivity period; denial of the Motion is consistent with the policy of § 1121(d); and creditors should have the opportunity to file a plan.

■ Sharon, as movant, has the burden of proving, or offering to prove, that sufficient cause exists to justify an extension of the exclusivity period. *Teachers Insurance and Annuity Association v. Lake in the Woods (In re Lake in the Woods)*, 10 B.R. 338 (Bankr.E.D.Mich.1981); *In re Ravenna Industries*, 20 B.R. 886 (Bankr. N.D.Ohio 1982); *In re Parker Street Florist & Garden Center*, 31 B.R. 206 (Bankr. D.Mass.1983); *In re Tony Downs Foods Co.*, 34 B.R. 405 (Bankr.D.Minn.1983); *See also Gains v. Perkins (In re Perkins)*, 71 B.R. 294 (Bankr.W.D.Tenn.1987). No evidence was taken because of shortness of time. Arguments of counsel for Sharon, both oral and written, were received. Even accepting counsel's arguments as fact insofar as they pertained to factual matters, nothing was offered indicating progress. The conclusions argued by counsel were unsupported. *See In re Ravenna Industries*, 20 B.R. 886 (Bankr.N.D.Ohio 1982). Sharon has not disclosed any information which would indicate sufficient progress in its negotiations to justify an extension of the exclusivity period.

■ The Committee has expressed great concern for the immediate future of Sharon, asserting that Sharon's plant is in danger of permanently shutting down. The basis for such a concern is well founded. At present, Sharon is operating inefficiently with only one blast furnace which itself is in danger of shutting down. Sharon has admitted almost from the beginning that it has two blast furnaces in need of repair. The blast furnace which is newer, larger and more efficient is not operational and requires $18,000,000 to overhaul and reline. The other blast furnace which is older and less efficient has been operated since it was last relined in 1979. At that time, its expected life was five years before further relining would be required. It has now been operated for eight years and is in

imminent danger of being shut down. If Sharon's only operational blast furnace is shut down, the result would be, in all likelihood, a shut down of major plant operations.

Sharon has shown no meaningful progress toward obtaining the $18,000,000 financing package necessary to reline the idle blast furnace and assure continued operation.

Sharon has also shown no progress toward reducing its interest burden on approximately $40,000,000 of borrowed working capital. The effective interest rate on this working capital financing is approximately 28% to 30% per annum. Four months of Chapter 11 protection is more than sufficient to solve this problem. Such a burden must be resolved, for without a solution, no plan seems feasible. *See, In re Larmar Estates, Inc.*, 6 B.R. 933 (Bankr.E. D.N.Y.1980).

These two factors alone threaten the survival of the debtor and require speedier progress than has been shown. The leverage accorded to the debtor by the period of exclusivity must give way to the legitimate interests of other parties in interest so that progress toward an effective reorganization of the debtor may be enhanced before it is too late. The proceeding must be opened up to substantial and significant input by the creditors in the event they can propose a means (possibly by proposal of a plan of reorganization) which will rescue the debtor from its precarious posture.

For the reasons set forth above in connection with the Order of Court dated August 17, 1987, denying the debtor's Motion, this court finds that no cause has been shown to justify an extension of the exclusivity period.