In re **HENRY MAYO NEWHALL MEMORIAL HOSPITAL, a California nonprofit public benefit corporation, Debtor.**

**Official Committee of Unsecured Creditors, Appellant,**

v.

**Henry Mayo Newhall Memorial Hospital, Appellee.**

**BAP No. CC–02–1282–KMaKi.**

**Bankruptcy No. SV–01–20903–AG.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted July 19, 2002.

Filed Aug. 2, 2002.

Daniel H. Reiss, Levene, Neale, Bender, Rankin & Brill, Los Angeles, CA, for Official Committee of Unsecured Creditors.

Michael H. Weiss, Berkowitz, Black & Zollke, Beverly Hills, CA, for Henry Mayo Newhall Memorial Hospital.

Before KLEIN, MARLAR and KIRSCHER,[1] Bankruptcy Judges.

1. Hon. Ralph Kirscher, Bankruptcy Judge for the District of Montana, sitting by designation.

## OPINION

KLEIN, Bankruptcy Judge.

This is an appeal from a three-month extension of the debtor-in-possession's exclusive period in which to file a chapter 11 plan of reorganization. Concluding that the pendency of a motion for a further extension of time saves the appeal from mootness and that the standard of review is de novo, we AFFIRM the order granting the first extension.

## FACTS

Henry Mayo Newhall Memorial Hospital ("Hospital"), a California nonprofit public benefit corporation, owns and operates a 217–bed hospital in the Santa Clarita Valley of northern Los Angeles County. It is the only Level II Trauma Center and General Acute Care facility within 400 square miles.

On November 26, 2001, the Hospital, which was losing about $1 million/month, filed a chapter 11 case. As debtor, it was presumptively entitled under 11 U.S.C. §§ 1121(b)–(c) to "exclusive" periods of 120 days (until March 26, 2002) in which only it could file a plan of reorganization and 180 days (until May 28, 2002[2]) to obtain acceptance by each impaired class.

On February 20, 2002, the Hospital filed a motion to extend exclusivity dates to June 28 and August 30, 2002, some 214 and 277 days, respectively, after the order for relief.

The Hospital argued the complexity of the case was "cause" to extend exclusivity and pointed to the need to: (1) resolve a dispute with the radiology group that is essential to its ability to operate as an

2. Tuesday, May 28, 2002, was the deadline because the 180th day was a Saturday and the ensuing Monday a national holiday. Fed. R.Bankr.P. 9006(a).

acute care facility; (2) challenge a particular claim; (3) renegotiate contracts with health care plans; and (4) negotiate with governmental creditors. The supporting evidence was intended to demonstrate progress in key negotiations and improvement in net revenue from a loss of $1 million/month to a gain of $1 million/month.

The court did not act on the motion to extend before expiration of the 120–day plan filing period on March 26, 2002.

On April 10, 2002, the appellant Official Committee of Unsecured Creditors ("Committee") filed an opposition, asserting that the Hospital was not forthcoming about intended terms of a plan and had refused to consider a sale of assets despite inquiries by potential purchasers with track records of acquiring and managing hospitals.

The Committee argued that: (1) unsecured creditors should be allowed to protect themselves by proposing competing plans because the nonprofit status of the Hospital blunts the force of the absolute priority rule, which usually affords creditors leverage to block plans that give value to owners; (2) all parties would benefit from the end of exclusivity; and (3) the Hospital's refusal to explore possible sales of itself or its assets constituted a breach of its fiduciary duty to creditors.

The Hospital replied that opening the door to a sale of assets to another hospital operator would unduly interfere with the Hospital's efforts to reorganize itself without changing its organizational structure or management. It contended that the sale process would: (1) be expensive and protracted; (2) upset negotiations with

creditors, service providers, unions, and employees; (3) impede efficient management; and (4) disrupt fund-raising activities on behalf of the Hospital. Finally, conceding that the absolute priority rule does not protect unsecured creditors in this case, the Hospital argued that they would nonetheless be sufficiently protected by other § 1129(a) plan confirmation elements, including "good faith," "best interest," and "feasibility."

The bankruptcy court granted the motion. It found "cause" to extend exclusivity periods from 120 and 180 days to 214 and 277 days because: (1) this was a first extension; (2) in a complicated case; (3) that had not been pending for a long time, relative to its size and complexity; (4) in which the debtor did not appear to be proceeding in bad faith; (5) had improved operating revenues so that it was paying current expenses; (6) had shown a reasonable prospect for filing a viable plan; (7) was making satisfactory progress negotiating with key creditors; (8) did not appear to be seeking an extension of exclusivity to pressure creditors; and (9) was not depriving the Committee of material or relevant information. The order was entered on May 15, 2002.

This timely appeal followed. We imposed an expedited schedule for briefs and argument.

The debtor did not file a plan of reorganization by the June 28, 2002, deadline, but rather filed another motion to extend exclusivity. The parties indicated at oral argument that they agreed to extend exclusivity until July 23, 2002, when a status hearing was to be held in bankruptcy court.[3]

---

**3.** On July 23, 2002, the bankruptcy court set an evidentiary hearing on the motion for second extension of exclusivity for August 2, 2002, and later vacated that schedule in light

of the pendency of this appeal, setting a further status conference on the motion for August 23, 2002. Order Vacating Evidentiary Hearing and Request For Documentation, No.

## JURISDICTION

Federal subject-matter jurisdiction was based on 28 U.S.C. § 1334. Adjustment of exclusivity under § 1121(d) is a "core proceeding" plan confirmation matter that a bankruptcy judge may hear and determine. 28 U.S.C. § 157(b)(2)(L). Our jurisdiction to review interlocutory § 1121(d) orders is founded upon 28 U.S.C. § 158(a)(2).

## ISSUES

1. Whether expedited schedules are required for review of § 1121(d) decisions to adjust exclusivity periods.

2. Whether the appeal is moot.

3. Whether the applicable standard of review is de novo or abuse of discretion.

4. Whether the bankruptcy court erred in extending the debtor's § 1121 exclusivity periods to file and to obtain acceptances of a chapter 11 plan of reorganization.

## STANDARD OF REVIEW

■ As we shall later explain, we conclude that the question of § 1121(d) "cause" to adjust exclusivity is a mixed question of law and fact that is reviewed de novo. *Groner v. Miller (In re Miller)*, 262 B.R. 499, 503 (9th Cir. BAP 2001). Mootness is a question of law that we raise sua sponte and address de novo. *Menk v. LaPaglia (In re Menk)*, 241 B.R. 896, 903 (9th Cir. BAP 1999). We review findings of fact for clear error.

SV–01–20903–AG (Bankr.C.D.Cal. July 24, 2002).

4. The controlling grant of appellate jurisdiction is:

 (a) The district courts of the United States shall have jurisdiction to hear appeals
 (1) from final judgments, orders, and decrees;

## DISCUSSION

This appeal reflects a battle for long-term control of the Hospital. Existing management wishes to remain in place and in control of the reorganization process by extending the debtor's exclusive right to propose a plan. Unsecured creditors want to be able to propose a competing plan because they think that more of the accumulated debt might be paid either if another entity took over the Hospital or if the credible threat of that happening caused various parties in interest to take more accommodating positions in plan negotiations.

We begin with the timing issue that was resolved during the motion stage of this appeal and proceed to consider questions of mootness, the appropriate standard of review, and the merits of the extension of exclusivity.

### I

■ Appeals from interlocutory orders under § 1121(d) increasing or reducing exclusivity periods pose special scheduling challenges to the courts entertaining the appeals.

Exclusivity adjustments are unique among bankruptcy appeals because they comprise the sole category of interlocutory orders that may be appealed as of right. 28 U.S.C. § 158(a)(2). All other interlocutory orders (including refusals to adjust exclusivity) require leave of court to have interlocutory appellate review. 28 U.S.C. § 158(a)(3).[4]

 (2) from interlocutory orders and decrees issued under section 1121(d) of title 11 increasing or reducing the time periods referred to in section 1121 of such title; and
 (3) with leave of court, from other interlocutory orders and decrees;
 of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title. An

The appeal of right for interlocutory orders adjusting exclusivity prescribed by 28 U.S.C. § 158(a)(2) was added by the Bankruptcy Reform Act of 1994 with the explanation:

> Under current law, an order extending the debtor's exclusive period to file a plan is an interlocutory order. 28 U.S.C. § 158(a) provides that appeal from interlocutory orders of a bankruptcy judge may be made to the district court only upon leave of the district court, and not as a matter of right. Section 102 of the bill would amend 28 U.S.C. § 158(a) so as to provide for an immediate appeal as of right to the district court from a bankruptcy court's order extending or reducing that debtor's exclusive period in which to file a plan.

H.R.REP. No. 103–835, at 36 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3344–45.

Before 1994, there was a perceived abuse in the practice of some courts routinely extending exclusivity without requiring proof of "cause," in circumstances that were effectively unreviewable due to the difficulty of obtaining leave to appeal, and thus upset the balance of competing interests reflected by the 120 and 180–day periods in § 1121. *See* Karen Gross & Patricia Redmond, *In Defense of Debtor Exclusivity: Assessing Four of the 1994 Amendments to the Bankruptcy Code,* 69 AM.BANKR.L.J. 287, 292–93 (1995); DAVID G. EPSTEIN ET AL., BANKRUPTCY § 11–15 (1992) ("In our view courts have been too generous to debtors").

As the congressional committee that prepared the pertinent 1994 amendment observed, "undue extension can result in excessively prolonged and costly delay, to the detriment of the creditors." H.R.REP. No. 103–835, at 36 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3344.

The fact that Congress took the extraordinary step of authorizing appeals of right from interlocutory exclusivity adjustments has several implications for courts. First, it must be presumed that Congress meant for the courts to take steps to assure that these appeals are resolved on the merits. Second, it follows that we cannot manage such appeals in a manner that makes the right of appeal illusory.

Timing is critical if we are to fulfill our duty to resolve these appeals on the merits without allowing them to become moot. Exclusivity orders are inherently transitory and are easily mooted either by the passage of time or by the occurrence of further events that make it impossible to fashion effective appellate relief. In order to avoid reducing the right to appeal to an illusion, it follows that we are obliged to resolve such appeals with dispatch. *See* Gross & Redmond, 69 AM.BANKR.L.J. at 293 ("If the amendment to § 158 is to be effective, there must be an expeditious appeal"); Kenneth N. Klee, *Adjusting Chapter 11: An Agenda for Basic Reform,* 69 AM.BANKR.L.J. 551, 552–53 (1995).

When the Committee requested an expedited briefing schedule, we promptly granted the request even though it was not made immediately upon filing the appeal. Although the parties tried to talk about the respective merits of their positions in their motion papers regarding the briefing schedule, we ruled—and now reiterate— that the probable merits, or lack thereof,

---

appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving.

28 U.S.C. § 158(a) (as amended, 1994).

Bankruptcy appellate panels exercise the district courts' appellate jurisdiction by virtue of 28 U.S.C. § 158(c).

are irrelevant to the question of whether to fix an expedited schedule for the appeal.

In sum, the fact that Congress has prescribed an appeal of right from § 1121 exclusivity adjustments requires us to take steps to assure that there is, in fact, substantive and meaningful appellate review. The ephemeral nature of exclusivity adjustments that are easily mooted by time and tide compels the conclusion that we must fix expedited schedules for timely, substantive appellate review regardless of whether we think the appellant is likely to succeed on the merits.

## II

We must consider the possibility that this appeal became moot when the extended exclusivity deadline, June 28, 2002, passed without a plan being filed.

■ This appeal would be moot if events have occurred that make it either impossible or inequitable for the appellate court to fashion effective relief. *Compare Nat'l Mass Media Telecomm. Sys., Inc. v. Stanley (In re Nat'l Mass Media Telecomm. Sys., Inc.),* 152 F.3d 1178, 1180 (9th Cir.1998), *with S.S. Retail Stores Corp. v. Ekstrom (In re S.S. Retail Stores Corp.),* 216 F.3d 882, 884–85 (9th Cir.2000). An unqualified expiration of exclusivity probably would be an event that renders it impossible to fashion effective relief.

■ We are not, however, faced with events that make it impossible to fashion effective relief because there was not an unqualified termination of exclusivity on June 28, 2002. Rather, there was then pending an as-yet undecided motion for a second extension of exclusivity.

The fact that a subsequent extension of exclusivity is pending in bankruptcy court enables us to fashion effective relief in this appeal from the order on the first extension. Reversal of one extension would necessarily be fatal to all subsequent extensions because § 1121(d) forbids retroactive requests: "On request of a party in interest made within the respective periods specified in subsection (c) of this section . . . ." 11 U.S.C. § 1121(d). A subsequent request that is made during an extension that does not survive appeal is not made "within" a qualifying exclusivity period. As a reversal would alter the status quo in favor of appellant, we are thus able to fashion effective relief.

This conclusion obviates the concern expressed by a prominent commentator that clever debtors might evade review by the tactic of a series of short-duration extensions that would expire before review could be completed. Klee, 69 AM.BANKR. L.J. at 553 ("It remains to be seen whether the mootness doctrine will undercut review of exclusivity orders."). An appeal of a short-duration extension is not mooted by expiration in the presence of subsequent extensions.

Thus, this appeal cannot become moot unless and until the subsequent request for extension is finally denied. As that has not yet occurred, the appeal is not moot.

## III

The standard of review of "cause" for § 1121 exclusivity adjustments is an open question in the Ninth Circuit.

### A

Before 1994, there were few appellate decisions and a division of authority.

One view held that review of § 1121(d) "cause" is de novo, rather than abuse of discretion. *In re Lake in the Woods,* 10 B.R. 338, 342–43 (E.D.Mich.1981).

The other view was that determinations of "cause" are reviewed for abuse of discretion. *E.g., In re Gibson & Cushman Dredging Corp.,* 101 B.R. 405, 409

(E.D.N.Y.1989). The premise underlying this view was that, as many bankruptcy courts have held, the determination of "cause" involves the exercise of delicate judgments that are discretionary in nature. *E.g., In re Sharon Steel Corp.*, 78 B.R. 762 (Bankr.W.D.Pa.1987).

The one court of appeals that mentioned exclusivity did so in dicta, using terms—characterizing creditors as "hostages" of chapter 11 debtors during exclusivity—hinting at non-deferential review. *Utd. Savings Ass'n v. Timbers of Inwood Forest Assocs., Ltd. (In re Timbers of Inwood Forest Assocs., Ltd.)*, 808 F.2d 363, 372 (5th Cir.1987) (en banc), *aff'd*, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988) (§ 1121 "was designed, and should be faithfully interpreted, to limit the delay that makes creditors the hostages of Chapter 11 debtors").

The pre–1994 appeals all had an additional nuance that no longer applies. They were appeals to district courts that, regardless of which standard of review was articulated, had first been persuaded to grant interlocutory leave to appeal.

### B

The 1994 Amendments are significant in two respects pertaining to the standard of review of § 1121(d) "cause." First, they authorized interlocutory appeals "of right" only for adjustments of exclusivity; refusals to adjust exclusivity still require leave to appeal. Second, the appeals of right came with the following explanation:

> [U]ndue extension can result in excessively prolonged and costly delay, to the detriment of the creditors....... The Committee intends that the district court [and BAP] carefully consider the circumstances of each case so appealed with a view to encouraging a fair and equitable resolution of the bankruptcy.

H.R.REP. No. 103–835, at 36 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3344–45.

Congress was changing the pre–1994 status quo regarding exclusivity in response to concerns that there were undue extensions that were not being effectively reviewed on appeal. The provision for appeals of right eliminated the problem that the requirement of leave to appeal made the appellate courts too remote. The nub of the interpretative question is whether Congress also was addressing the criticism that the appellate courts were being too deferential to the bankruptcy courts on those occasions when they did grant leave to appeal.

The stated Congressional intention that the appellate court "carefully consider the circumstances of each case" is not consonant with review for abuse of discretion. If the latter was contemplated, then the formulation would have been more in the nature of the standard statement of the abuse of discretion standard, which requires affirmance unless the appellate court has "the definite and firm conviction that the [trial] court committed a clear error of judgment." *E.g., United States v. Braunstein*, 281 F.3d 982, 992 (9th Cir. 2002).

■ Restated and distilled to its essence, what is at stake in this choice between de novo and abuse of discretion review is a matter of the degree of disagreement with the trial court that is necessary to support reversal. Under de novo review, we may reverse if we *merely disagree* with the trial court; abuse of discretion requires that we *profoundly disagree* (i.e. have a "firm and definite conviction" of a "clear error of judgment").

The language, "carefully consider the circumstances of each case" coupled with an observation that "undue extension can result in excessively prolonged and costly

delay, to the detriment of the creditors," is indicative of a more searching inquiry than abuse of discretion. It suggests an expectation that the appellate court will be free to substitute its judgment for that of the bankruptcy court.

In light of this, we are persuaded that the question of § 1121(d) "cause" is subject to de novo review as a mixed question of law and fact in which the historical facts are established, the rule of law is undisputed, and the issue is whether the facts satisfy the rule. *Murray v. Bammer (In re Bammer)*, 131 F.3d 788, 792 (9th Cir. 1997) (en banc). Here, the issue is whether known facts satisfy the legal requirement of "cause" to extend exclusivity.

 This does not mean that the question of § 1121(d) "cause" is susceptible of easy analysis or that the trial judge is irrelevant. To the contrary, the question is inherently fact-specific and calls for a delicate exercise of judgment about which seasoned judges could differ. The point is that in de novo review we accept the facts established in the bankruptcy court (unless they are clearly erroneous) and make the "hard" judgment anew in circumstances in which we study, consider, respect, and are assisted by, but do not defer to, the reasoning of the trial judge.

Thus, we will proceed, in the manner of de novo review, with a "careful" consideration of the "circumstances" of this appeal "with a view to encouraging a fair and equitable resolution" of the case.

## IV

 The question on the merits is whether there was § 1121(d) "cause" to extend exclusivity to June 28 and August 30, 2002.[5]

A variety of matters probative of § 1121(d) "cause" are standardly considered. *In re Dow Corning Corp.*, 208 B.R. 661, 664–65 (Bankr.E.D.Mich.1997); *In re Express One Int'l, Inc.*, 194 B.R. 98, 100 (Bankr.E.D.Tex.1996).

The bankruptcy judge in this instance considered the matters listed in the *Dow Corning* and *Express One* decisions, when he found § 1121(d) "cause." He saw the situation as: (1) a first extension; (2) in a complicated case; (3) that had not been pending for a long time, relative to its size and complexity; (4) in which the debtor did not appear to be proceeding in bad faith; (5) had improved operating revenues so that it was paying current expenses; (6) had shown a reasonable prospect for filing a viable plan; (7) was making satisfactory progress negotiating with key creditors; (8) did not appear to be seeking an extension of exclusivity to pressure creditors; and (9) was not depriving the Committee of material or relevant information. While we think it a close case, we agree with the bankruptcy court that this situation adds up to § 1121(d) "cause" for the initial extension of exclusivity.

It is a close case because affirmative answers to a number of the inquiries listed in *Dow Corning* and *Express One* do not necessarily favor extending exclusivity. Professors Epstein, Nickles, and White have cogently debunked the propositions that complex cases require extended exclusivity, negotiations are facilitated by extended exclusivity, and pending litigation warrants extended exclusivity. EPSTEIN ET AL., § 11–15.

---

5. The statute provides:

 (d) On request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120–day period or the 180–day period referred to in this section. 11 U.S.C. § 1121(d).

There is truth in their observation, backed by examples from prominent cases, that a likely consequence of the denial of an extension of exclusivity is "not that creditor plans will be proposed and approved, but that the threat of such plans will cause the debtor to come forward more quickly than he might otherwise." *Id.* (footnote omitted). For example, in the *Public Service Co. of New Hampshire* case, which still qualifies as one of the all-time largest and most complex chapter 11 cases and which (as here) required independent negotiations with governmental entities, the debtor was permitted one seven-month exclusivity extension. *In re Pub. Serv. Co. of New Hampshire*, 88 B.R. 521, 533–42 (Bankr.D.N.H.1988). A second extension was denied in the face of apparent deadlock, after which a consensual plan was achieved. Epstein et al., § 11–15.

Even if a competing plan were to be filed, the court would retain control over scheduling confirmation. It is, for example, common for competing plans to be placed on the same schedule so that they can be considered in tandem.

■ We also agree with the *Dow Corning* court that a transcendent consideration is whether adjustment of exclusivity will facilitate moving the case forward toward a fair and equitable resolution. *In re Dow Corning*, 208 B.R. at 670.

The key question to us, then, is whether the first extension of exclusivity functioned to facilitate movement towards a fair and equitable resolution of the case, taking into account all the divergent interests involved.

Here, the Committee argues that it wants the latitude to propose a plan that will bring in a different entity to purchase and run the hospital. This is good argument. The threat posed to the debtor's incumbent management and other parties in interest by the prospect of a competing plan may stimulate movement towards a consensual plan. We are not, however, persuaded that the first extension of exclusivity hamstrung the ability of the Committee to talk with potential acquirers. At the preliminary stage in such discussions, the issue is, as the bankruptcy court noted, primarily informational, and the Committee had access to relevant information. Nor do the parties appear to be stalemated.

The Committee adds that the Hospital's nonprofit status puts creditors in an unusually disadvantaged negotiating position because they are not able to assert the Bankruptcy Code's absolute priority rule to block unacceptable plans that give value to junior interests before paying creditors in full. 11 U.S.C. § 1129(b). *Sec. Farms v. Gen. Teamsters, Local 890 (In re Gen. Teamsters, Local 890)*, 265 F.3d 869, 873 (9th Cir.2001). This is also good argument. The unsecured creditors in the case of a nonprofit entity with no equity owners hold the economic interests at the margin of the debtor and are in the same take-it-or-leave dilemma as chapter 13 unsecured creditors, who are not entitled to accept or reject plans. As the marginal class in the case, the unsecured creditors have the greatest incentive to increase the total amount to be paid through the plan—every additional dollar is their money. This counsels against extending exclusivity.

Nevertheless, we ultimately are persuaded that extending exclusivity to June 28 and August 30, 2002, facilitated progress toward a fair and equitable resolution of the case. The case is unquestionably close and calls for a delicate exercise of judgment. In the end, however, we agree with the bankruptcy court that there was the requisite § 1121(d) "cause" for the first extension.

We express no view about the merits of any subsequent extension. In view of our analysis of mootness and conclusion that reversal of one extension is necessarily fatal to all subsequent extensions, we do not share the appellant's concern that it might be deprived of effective appellate review by a tactic of a series of short extensions.

## CONCLUSION

We were required to act on this appeal on an expedited basis. The fact that a request for a further extension of time was pending on the date scheduled for expiration of the extended exclusivity period prevents the appeal from being moot. The appropriate standard of review for orders adjusting exclusivity under § 1121(d) is de novo. We conclude on de novo review that the bankruptcy court did not err in finding that there was cause to extend the exclusivity.

AFFIRMED.

MARLAR, Bankruptcy Judge, concurring.

While I join in Parts I, II, and IV and concur with the result affirming the bankruptcy court's decision, I cannot agree with the conclusion in Part III that our standard of review is de novo rather than abuse of discretion.

Although the track to appellate decision is clearly quicker on an exclusivity issue, I do not envision that as requiring a divergence from well-established law and changing to a de novo standard of review. District courts and bankruptcy courts have consistently held that the applicable standard of review for § 1121(d) cases is abuse of discretion. *See, e.g., Geriatrics Nursing Home, Inc. v. First Fid. Bank, N.A. (In re Geriatrics Nursing Home, Inc.),* 187 B.R. 128, 130–31 (D.N.J.1995); *In re Murray,* 116 B.R. 6, 9 n. 3 (D.Mass.1990); *Rosin v. RCN II (In re RCN II),* 118 B.R. 460, 463 (W.D.Mich.1990); *In re Gibson & Cushman Dredging Corp.,* 101 B.R. 405, 409 (E.D.N.Y.1989); *In re Washington–St. Tammany Elec. Co-op. Inc.,* 97 B.R. 852, 854 (E.D.La.1989); *Gaines v. Perkins (In re Perkins),* 71 B.R. 294, 297 (W.D.Tenn. 1987). *See also In re Sletteland,* 260 B.R. 657, 661 (Bankr.S.D.N.Y.2001); *In re All Seasons Indus., Inc.,* 121 B.R. 1002, 1004 (Bankr.N.D.Ind.1990); *In re Tony Downs Foods Co.,* 34 B.R. 405, 406 (Bankr. D.Minn.1983); *In re Sharon Steel Corp.,* 78 B.R. 762 (Bankr.W.D.Pa.1987).

The question of whether or not a trial court chooses to extend or deny exclusivity upon a showing of "cause" is, at its heart, always a discretionary one. Section 1121(d) specifically provides that on request of a party in interest, "the court *may* for cause reduce or increase" the exclusivity period. 11 U.S.C. § 1121(d) (emphasis added). The plain language of the statute denotes its discretionary nature by using the term "may." *Oyama v. Sheehan (In re Sheehan),* 253 F.3d 507, 513 (9th Cir.2001) ("may" is a discretionary term); *First Interstate Bank of Nev., N.A. v. CIC Inv. Corp. (In re CIC Inv. Corp.),* 192 B.R. 549, 552 (9th Cir. BAP 1996) (same). We presume that Congress says in a statute what it means and means what it says. *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,* 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000).

The majority supports its position that review should be de novo with the Congressional report made during the 1994 amendments, when it was stated that it was Congress' intention that "the district court *carefully consider the circumstances of each case so appealed* with a view to encouraging a fair and equitable resolution of the bankruptcy." H.R.REP. No. 103–835, at 36 (1994), *reprinted in* 1994

U.S.C.C.A.N. 3340, 3345. (emphasis added).

This statement does not mandate a particular standard of review, however, and in my view, is "standard neutral." Congress could easily have stated that it intended any review to be "de novo."

The majority also cites, for support of the de novo standard, an opinion which addressed the mixed question of law and fact of what constitutes "just cause or excuse" for an injury under § 523(a)(6). *See Murray v. Bammer (In re Bammer)*, 131 F.3d 788, 791–92 (9th Cir.1997). In *Bammer*, "cause" was modified by "just," and the court wrestled with the legal definition of that term. *Id.* at 792. Therefore, this comparison is not on point.

The Michigan case, which is also cited by the majority, is not authoritative in our Circuit, and although it is good law, it has not been cited by any appellate court for the application of the de novo standard of review to a decision under § 1121(d). *See In re Lake in the Woods*, 10 B.R. 338, 342–43 (E.D.Mich.1981). In fact, *Lake in the Woods* was decided many years before the 1994 amendment. The court looked to former Bankruptcy Rule 906 (now Federal Rule of Bankruptcy Procedure 9006—the general enlargement provision) and observed that § 1121(d) did not use the words "in its discretion" in addition to "may". Rule 9006(b)(1) provides, in part, that "the court for cause shown may at any time in its discretion . . . .". *Lake in the Woods*, 10 B.R. at 342–43. The words "in its discretion" appear to be superfluous, however, since "may" alone means a permissive and discretionary act. Therefore, this case authority is not persuasive.

A court abuses its discretion if its decision is based on an erroneous view of the law or a clearly erroneous factual finding. *Beech Aircraft Corp. v. United States*, 51 F.3d 834, 841 (9th Cir.1995). The majority acknowledges that the question of § 1121(d) "cause" is "inherently fact-specific." The bankruptcy court must balance the rights between the debtor and its creditors and must interpret § 1121 in a way "to limit the delay that makes creditors the hostages of Chapter 11 debtors." *United Sav. Ass'n v. Timbers of Inwood Forest Assocs., Ltd. (In re Timbers of Inwood Forest Assocs., Ltd.)*, 808 F.2d 363, 372 (5th Cir.1987) (en banc), *aff'd*, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). Section 1121 "was designed to strike a balance between the rights and obligations of a debtor in possession and its creditors." *Sharon Steel*, 78 B.R. at 764.[6]

Therefore, the trial court, rather than the appellate court, must apply the type of judgment which is sensitive to the fluidity of each case. The *Timbers* court spoke of this duty as the bankruptcy judge's "obligation to decide, fairly and impartially, the hard questions." *Timbers*, 808 F.2d at 373. Indeed, *Timbers* saw this duty as an extension of the judge's discretionary authority "to manage the cases in front of him, fairly and impartially, in such a way as to promote their orderly and prompt disposition." *Id.* at 374. *See also Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). A trial court's inherent authority to manage its caseload is also reviewed for an abuse of discretion. *United States v. Goode*, 814 F.2d 1353, 1354 (9th Cir.1987).

I believe that "cause" under § 1121(d) is akin to the determination of "cause" for relief from the automatic stay, or "cause"

---

6. Creditors also have important rights concerning timing and the filing of a plan, such as the right to seek reduction of the exclusivity period, or the appointment of a trustee, which would likewise end a debtor's exclusivity rights.

to grant an extension of the time to accept or reject a lease under § 365(d)(4), and each of these types of decisions is also reviewed for an abuse of discretion. *Mac Donald v. Mac Donald (In re Mac Donald)*, 755 F.2d 715, 716 (9th Cir.1985) ("cause" under § 362(d) is discretionary and is reviewed for an abuse of discretion.); *BC Brickyard Assocs., Ltd. v. Ernst Home Ctr., Inc. (In re Ernst Home Ctr., Inc.)*, 221 B.R. 243, 248 (9th Cir. BAP 1998) ("An order to extend the time to assume or reject nonresidential real property leases is subject to the abuse of discretion standard."). *See also Willamette Water Front, Ltd. v. Victoria Station Inc. (In re Victoria Station Inc.)*, 88 B.R. 231, 237 n. 9 (9th Cir. BAP 1988), *aff'd*, 875 F.2d 1380 (9th Cir.1989) (comparing extension under § 365(d)(4) to the enlargement of the debtor's exclusive period to file a chapter 11 plan under § 1121(d)).

The policy considerations are similar for analyzing the merits of stay relief and exclusivity. The bankruptcy court is the "jealous guardian" of the automatic stay, which is fundamental to the reorganization process. *Farm Credit Servs. v. Roth (In re Roth)*, 171 B.R. 357, 364 (Bankr.D.S.D. 1994); *Mataya v. Kissinger (In re Kissinger)*, 72 F.3d 107, 109 (9th Cir.1995) (the automatic stay is a "vital protection" of the debtor). The automatic stay allows the bankruptcy court "an opportunity to harmonize the interests of both debtor and creditors while preserving the debtor's assets for repayment and reorganization of his or her obligations." *McCarthy, Johnson & Miller v. North Bay Plumbing, Inc. (In re Pettit)*, 217 F.3d 1072, 1077 (9th Cir.2000).

Notwithstanding the importance of the automatic stay to the dynamics of a bankruptcy case, the existence of "cause" for stay relief is "a question dependent upon facts .. and guided by a trial court's dis-

cretion." *In re Brumlik*, 185 B.R. 887, 890 (Bankr.M.D.Fla.1995); *Sun Valley Newspapers Inc. v. Sun World Corp. (In re Sun Valley Newspapers, Inc.)*, 171 B.R. 71, 74 (9th Cir. BAP 1994) (bankruptcy court abuses its discretion if it "committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.") The same factor-driven analysis applies to extensions of time to assume or reject leases under § 365(d)(4), *Ernst Home Ctr.*, 221 B.R. at 253, as well as, in my view, to a determination of cause to extend or shorten the exclusivity period under § 1121(d). *In re Express One Int'l, Inc.*, 194 B.R. 98, 100 (Bankr.E.D.Tex. 1996) (listing relevant factors under § 1121(d)).

In a chapter 11 case, with the dynamics between the rights of the debtor, creditors and other interests in constant flux prior to confirmation, "cause" under § 1121(d) assumes practicality. It could be defined as "any reason cognizable to the equity power and conscience of the court" in order to preserve the symmetry of rights. *See In re Sar–Manco, Inc.*, 70 B.R. 132, 136 (Bankr.M.D.Fla.1986) (discussing "cause" for stay relief under § 362(d)).

The 1994 amendment to 28 U.S.C. § 158(a) was intended to streamline the administration of chapter 11 cases by eliminating repeated and lengthy extensions of exclusivity and to carefully balance the positions of chapter 11 debtors and their creditors. *See generally* Angela K. Layden, *Extensions of Exclusivity Under § 1121: Appeal as a Matter of Right*, 14 Am.Bankr.Inst.J. 26 (Sept.1995). The amendment did this specifically by allowing interlocutory orders granting extensions or reductions of the exclusivity period to be appealed immediately.

However, this change did not alter the pragmatic nature of a § 1121(d) motion or of the "cause" analysis, but simply meant

that creditors' plans could not be put off indefinitely, in the absence of cause to extend the debtor's exclusive period. In other words, Congress simply intended that reason, rather than tactics, should control a case.

In my opinion, the abuse of discretion standard already allows the appellate court to determine whether there exist clear errors of fact in the trial court's analysis of the existence of "cause." *Beech Aircraft,* 51 F.3d at 841. *See also Perkins,* 71 B.R. at 297 (bankruptcy court's discretion to grant enlargements of the exclusivity period is "tempered by the section's requirement that enlargements be granted for cause").

After reviewing the legislative history of § 1121, which indicated the permissive nature of the grant of an extension or reduction of the exclusivity period, one court summed it up as follows:

> It is clear that both the House and the Senate intended to vest in the Bankruptcy Court, discretion as to whether or not to grant an extension of exclusivity or a reduction of exclusivity and that such a decision should be for cause shown based upon all the facts and circumstances of the particular case.

*Tony Downs Foods,* 34 B.R. at 407.

For this appeal of a § 1121(d) order, therefore, I would hold that the applicable standard of review is whether, considering all of the fluid factors of an evolving chapter 11 case, the bankruptcy court abused its discretion. On that point, and that point alone, do I part company with my colleagues.